GASTON *et al.*, *Appellants*, v. LAMKIN *et al.*

In Banc, March 20, 1893.

1. County Court: BUILDING COURTHOUSE AND JAIL: INCURRING INDEBTEDNESS: ELECTION: VALIDITY OF ORDERS. It is not necessary that an order of a county court made under Revised Statutes, 1889, section 852, for an election to incur an indebtedness in excess of the ordinary revenue for building a courthouse or jail, should recite that the county court found that it had become necessary to incur such indebtedness.

2. ——: ——: ——: ——: ——. The jurisdiction of the county court to make the order for the election is founded on a proper petition presented by more than one hundred qualified voters and taxpayers of the county.

3. ——: ——: ——: NOTICE OF ELECTION: EVIDENCE. The fact that notice of the holding of the election was duly given need not appear from the county court records; oral evidence being competent to show the giving of such notice.

4. ——: ——: ——: ——. The election authorizing the incurring of the indebtedness must, under Revised Statutes, 1889, section 855, be held in conformity with the law in force at the time of the election.

Gaston v. Lamkin.

5. ———: ———: ———: AUSTRALIAN BALLOT. The Australian ballot law (Acts 1891, p. 133) being then in force and the election having failed to conform to it, it was illegal and void.

6. Laws: CONSTRUCTION OF STATUTES. The rule applying to the construction of statutes, where a later one refers to prior ones for rules of procedure prescribed therein, stated.

7. Practice: CONTINUANCE: COSTS. Costs of a continuance caused by plaintiff having filed an amended petition may be adjudged against him.

*Appeal from Greene Circuit Court.* — HON. W. D. HUBBARD, Judge.

REVERSED AND REMANDED.

*George Hubbard* with *M. E. Benton, E. C. Crow* and *W. H. Curry* for appellants.

(1) The special tax, in excess of the limit of fifty cents on the $100 valuation for county purposes per year, is necessarily void, in the absence of any single empowering or jurisdictional fact under the law fixing the conditions of its levy and collection. Every such empowering or jurisdictional fact must affirmatively appear in detail on the face of the record in all such special statutory proceedings as this to acquire money or property for public use. Cooley on Taxation [2 Ed.] p. 339; Constitution, art. 10, secs. 11, 12; Revised Statutes, 1889, secs. 852–6; *Railroad v. Apperson*, 97 Mo. 300; *Railroad v. Young*, 96 Mo. 39, and cases cited; *Colville v. Judy*, 73 Mo. 651; *Warrensburg v. Miller*, 77 Mo. 56; *State ex rel. v. Scott*, 96 Mo. 72. (2) *Nunc pro tunc* entries or amendments could not cure such omissions. *Anderson v. Pemberton*, 89 Mo. 61; *Blize v. Castilo*, 8 Mo. App. 322; *Road in Reserve Township*, 2 Grant's Pennsylvania Cases. 203; *Stovall v. Emerson*, 20 Mo. App. 322; *Haggard v. Railroad*, 63 Mo. 302. (3) Oral or extraneous evidence cannot be admitted to

supply defects in the record of facts and so "eke out" a show of jurisdiction. *Cunningham v. Railroad*, 61 Mo. 33; *Young v. Thompson*, 14 Ill. 380; *Nichols v. Bridgeport*, 23 Conn. 189; *Kellogg v. McLaughlin*, 8 Ohio, 116; *Eaton v. St. Charles Co.*, 76 Mo. 492. Such holdings have not been upon the ground that the statute required the empowering facts to be recorded, but upon common law principle. *Ellis v. Railroad*, 51 Mo. 200; *Whitley v. Platte Co.*, 73 Mo. 30. (4) The requirements of the law as to what is known as the "Australian system" were wholly disregarded and omitted as to the form and manner of issuing, preparing, indorsing and depositing ballots and conducting the election in question, for which reason it must be held void. (5) Whenever one general statute invokes for a new use or purpose the general rule in relation to another subject for uniformity in the same state, it must be taken to mean the rule as existing when its use is required, unless the contrary be expressed. And the reference in section 855 of our statute to the general election law must mean the law as to that subject in force when the special election is to be held. *Kugler's Appeal*, 55 Pa. St. 123; *Jones v. Dexter*, 8 Fla. 276; *Harris v. White*, 81 N. Y. 532; *McKnight v. Crinnion*, 22 Mo. 559; *Attorney General v. Saggers*, 1 Price Eng. Exch. 182, 193-4.

*Galen Spencer* and *Samuel McReynolds* for respondents.

(1) Every prerequisite and step required by the statute leading up to and including the order for the special election was observed by voters and the county court in their proceedings. Revised Statutes, 1889, sec. 852. (2) The notice for the special election contained all the requirements exacted by the statutes and

was published as directed by law. Revised Statutes, 1889, sec. 853. As to proof of publication, etc., "It is the fact of publication, rather than the method of proving it, which is essential, and therefore it was competent to prove the fact by oral testimony of a witness." *Nevada to use v. Morris*, 43 Mo. App. 586; *Williams v. Cammick*, 61 American Decisions, 515 and notes. (3) In the case at bar the giving of the notice is proven by the introduction of the files of the newspapers containing the same, as well as by oral testimony, but it is objected that the form of notice is improper. The objection is not well taken. McCrary on Elections [3 Ed.] secs. 141, 142, 143, 144; *State ex rel. v. Commissioners*, 39 Kan. 293. (4) It was proper for the clerk to sign notice by order of county court. *Lawson v. Railroad*, 30 Wis. 597; *Dishon v. Smith*, 10 Iowa, 212; *Jordan v. Haynes*, 36 Iowa, 9. (5) The Australian system was not applicable to the special courthouse election. Section 855 of the Revised Statutes of 1889 directs how the elections for this special tax shall be conducted. This section was enacted in 1879. The Australian system was not in the legislative mind at that time, it being first enacted in 1889. The general election law of 1879, to-wit, chapter 60, article 1 of the Revised Statutes of 1889 is still in force for all elections not provided for by the Australian system, and was the election law applicable to the special election in question. "An act adopting by reference the whole or a portion of another statute, means the law as existing at the time of the adoption, and does not adopt any subsequent addition thereto or modification thereof." Endlich on Interpretation of Statutes, sec. 85, pp. 114-115; Presumption against needless change of law, same volume, sec. 113-115; *United States v. Paul*, 6 Pet. U. S. 141; *Kindall v. United States*, 12 Pet. 524; *Knapp v. Brooklyn*, 97 N. Y. 520; *In re Main*

*Street*, 98 N. Y. 454; *Darmstaeter v. Maloney*, 45 Mich. 621; Sutherland on Statutory Construction, sec. 257. "All laws must be executed according to the sense and meaning which they imported at the time of their passage." *Com. v. Railroad*, 27 Pa. St. 339.

BRACE, J.—This is an action against the judges and clerk of the county court and the collector of the revenue of Jasper county, in which the plaintiffs seek to set aside an order of said court levying special taxes, made at the May term of said court, on the twenty-ninth day of July, 1891, for the purpose of creating a fund to erect two courthouses in said county, and to restrain the collection of such taxes. The levy was ordered under the authority of article 3, chapter 21, Revised Statutes, 1889, in pursuance of an election held on the fourteenth of July, 1891, upon an order of the county court therefor made on the twenty-third of June, 1891, upon the petition of more than one hundred qualified voters and taxpayers of said county setting forth the amount of said fund asked to be raised, the objects and purposes for which, and the mode by which it was to be raised, as required by section 852 of said article.

The order for the election was as follows:

"Tuesday, June 23, 1891, Thirteenth Day of May Term.

"Now, at this day comes A. F. Lewis, John C. Bailey, R. G. Sloan, S. B. Griswold and J. P. Newell *et al*, and present their petition signed by more than one hundred legal qualified voters and taxpayers of Jasper county, setting forth that it has become necessary to incur an indebtedness for the purpose of building courthouses, in excess of the revenue of Jasper county provided for any one year as limited by law; and that Carthage, the county seat of Jasper county, has voted $50,000 to be used in conjunction with Jasper county for the building of a courthouse to be used jointly as

a courthouse and city hall, said city to have four rooms in such building, the location of the same to be designated by the county court, to be used for city offices; and that the citizens of the city of Joplin, of said Jasper county, have agreed to furnish the county a site for the building of a courthouse, and make the county a good and valid title thereto, provided the county will build thereon a courthouse with necessary offices for the terms of the circuit court holden at Joplin; and praying that an election be held for the purpose of submitting to the qualified voters of Jasper county, Missouri, a proposition to incur an indebtedness of seventy thousand dollars ($70,000), for the purpose of building such courthouses; fifty thousand dollars ($50,000) of which is to be used with fifty thousand dollars ($50,000) furnished by the said city of Carthage in building a courthouse in said city of Carthage, the county seat of said county, and twenty thousand dollars ($20,000) to be used in building a courthouse in the city of Joplin, upon said city furnishing a site upon which to build the same satisfactory to the county court, and making to the county a good and sufficient title thereto, said indebtedness to be paid by the direct levy of taxes for that purpose in three equal installments during three years.

"And it appearing to the satisfaction of the court that said petition is signed by more than one hundred qualified voters and taxpayers of Jasper county, and that said petition fully sets forth the object and purpose for which said election is to be held; and that the indebtedness sought to be incurred is to be paid by the direct levy of taxes in three years; and the matter being by the court seen, heard and fully understood, it is, therefore, ordered by the court that an election be held at the several voting precincts in Jasper county on Tuesday, the fourteenth day of July, 1891, for the

Gaston v. Lamkin.

purpose of voting on the proposition of incurring an indebtedness in said county of seventy thousand dollars ($70,000) for the building of courthouses; fifty thousand dollars ($50,000) of which is to be used with fifty thousand dollars ($50,000) furnished by the city of Carthage, for the building of a courthouse and city hall jointly by said county and the city of Carthage; the said city to have four rooms in said building, the location of the same to be designated by the county court, to be used for city offices; and the remaining $20,000 of said amount to be used in building a courthouse at Joplin with necessary offices for the terms of the circuit court holden at said city, on a site furnished by the citizens of said city of Joplin, and a good and sufficient title to the same. Also to increase the tax levy of twenty-five cents on each $100 valuation, for three years, in excess of the revenue provided for and limited by law for any one year, to pay for the same.

"And that the form of the ballots used at said election be as follows, viz.: 'In favor of an indebtedness of $70,000 for the purpose of building two courthouses, and of an increase of the tax levy of twenty-five cents on the $100 valuation for three years, to pay for the same, Yes,' and 'In favor of an indebtedness of $70,000 for the purpose of building two courthouses, and of an increase of the tax levy of twenty-five cents on the $100 valuation for three years to pay for the same, No.'

"And it is further ordered that the clerk of this court give twenty days notice of said election, by publication in the Carthage Banner, at least twenty days prior to the said fourteenth day of July, A. D. 1891."

On the same day the court made a further order appointing judges of said special election to be held on the fourteenth of July, 1891, for each of the several voting precincts in the several townships of said

county, and adjourned until the twenty-first day of July, 1891.

Due notice was given of the election in pursuance of the order, and as required by section 853 of said statute. The election was held in the several precincts on the day named, the vote returned to the county clerk, and by her and two justices of the peace associated with her for that purpose, counted, and the result certified to the county court as required by section 855 of said statute, on the seventeenth of July, 1891. At the next sitting of the county court thereafter, to-wit, on the twenty-first of July, 1891, the said court took up for consideration the returns of said election so certified to them, and by entry of record found "that there were cast in favor of the proposition six thousand eight hundred and thirty-three votes and that there were cast against the proposition three thousand and ninety five votes, leaving a lawful two thirds majority of the votes cast in favor of said proposition. Wherefore said proposition is by the court declared carried."

And among other orders made in regard to the matter which need not here be set out, the court on the same day made the following:

"Whereas, the legally qualified voters of Jasper county, Missouri, in pursuance of an order of the court calling for a special election, in compliance with a petition of not less than one hundred taxpaying citizens of said Jasper county, did on Tuesday the fourteenth day of July, 1891, by a two thirds majority, vote, elect and decide to create an indebtedness of $70,000 for the purpose of building two courthouses, and for an increase of the tax levy of twenty-five cents on the $100 valuation, for three years to pay the same; said tax to be levied upon all the taxable property, real, personal, merchandise, railroad and

telegraph companies, and all licenses made taxable by law, within the limits of said Jasper county, and it appearing to the satisfaction of the court that there exists a necessity for the assessment, levy and collection of a special tax in said Jasper county, as above set forth, for the building of two courthouses as specified in the order of the court; it is, therefore, ordered by the court that James H. Dryden, prosecuting attorney of Jasper county, petition the circuit court or the judge thereof, in vacation, to make an order commanding the county court to assess, levy and collect said special tax of twenty-five cents on the $100 valuation, as voted for by said voters of Jasper county.''

Afterwards on the twenty-ninth day of July, the following order was filed and presented to said county court:

''Now on this twenty-fifth day of July, 1891, is presented to me, the undersigned judge of the circuit court of Jasper county, Missouri, by James H. Dryden, prosecuting attorney of Jasper county, Missouri, a petition accompanied by a certified order of the county court of said county, praying for an order commanding and directing the county court of Jasper county, Missouri, to assess, levy and collect a tax for the purpose of building two courthouses as set forth in his petition, on the taxable property within the limits of Jasper county, Missouri, and it appearing that there has been a petition of not less than one hundred tax-paying citizens of Jasper county, praying the county court to submit a proposition to the qualified voters of Jasper county, Missouri, to create an indebtedness of $70,000 for the purpose of building two courthouses, and of an increase of the tax levy of twenty-five cents on on the $100 valuation, for three years, to pay the same; $50,000 of said money to be used with a like

sum furnished by the city of Carthage for the building of a courthouse on the public square at Carthage, the county seat of Jasper county, the said city of Carthage to have the use of four rooms in said courthouse; and $20,000 of said $70,000 to be used in building a courthouse at Joplin on a site to be furnished the county by that city; and that at an election held in said Jasper county in pursuance to the petition of said taxpaying citizens, and in pursuance to an order of the county court of said Jasper county, based upon said petition, on Tuesday, the fourteenth day of July, 1891, it was decided by a twothirds majority of the qualified voters voting at said election to create said indebtedness of $70,000, and an increase of the tax levy of twenty-five cents on the $100 valuation for three years to pay the same, voted in favor of said proposition; and it further appearing that there exists a necessity for the assessment, levy and collection of said tax in said county, in addition to the taxes authorized to be levied and collected by section 7655 of the Revised Statutes of Missouri, and the assessment, levy and collection of said taxes will not be in conflict with the constitution and laws of this state.

"It is, therefore, ordered by me, said judge in vacation, that said county court of Jasper county, Missouri, be and it is hereby directed and commanded to have assessed, levied and collected said courthouse taxes as prayed, and in accordance with the vote so had and the law governing the same; and this order being a continuing order for the assessment, levy and collection of twenty-five cents of the $100 valuation, for the years 1891, 1892 and 1893, respectively.

"Given under my hand, this the day and year above written.

"M. G. McGREGOR,

"Judge of circuit court of Jasper county, Missouri."

Thereupon it was on the same day ordered by the said county court: "That in obedience to an order made by M. G. McGregor, judge of the circuit court of Jasper county, Missouri, made the twenty-fifth day of July, 1891, in the vacation of the circuit court, there be assessed, levied and collected for the year 1891 a tax of twenty-five cents on each $100 valuation on all the taxable property, real, personal, merchandise, and on all the licenses made taxable by law, within the limits of said Jasper county, to be known as a courthouse tax, and to be set apart and used only for the erection of two courthouses as voted for on the fourteenth day of July, 1891."

Under and by virtue of the foregoing orders and proceedings, the defendants in their several official capacities were proceeding to extend said special tax upon the tax book for 1891 against the property of plaintiffs and the other taxpayers of said county and to take all the necessary antecedent steps to enforce the collection thereof, when, on the twenty-first of August, 1891, this suit was instituted in the circuit court of Jasper county to set aside and annul said several orders. On the seventh of October, 1891, a change of venue was granted in the cause to the circuit court of Greene county, and on the ninth of November, 1891, on application of the plaintiffs, a temporary injunction was granted restraining the defendants from incurring any indebtedness in pursuance of said election and orders, and from proceeding with the levying or collecting of any taxes by authority thereof.

After answer filed the cause was heard upon the merits at the January term, 1892, of the circuit court of Greene county; the temporary injunction dissolved, and the plaintiffs' bill dismissed, and they appealed.

It is not necessary to set out or summarize the allegations of the petition impeaching the validity of the

proceedings, many of which were wholly unsupported by evidence, as this opinion will be confined to a consideration of such alleged errors and defects as are here. urged against them. It is proper, however, to say in view of those averments that it satisfactorily appears from the evidence that the defendants in the exercise of their official duties acted honestly, fairly and in good faith, and that at the election a large vote was polled at every voting precinct in the county, after the question to be passed upon had been thoroughly advertised and discussed throughout the county, and the evidence fails to show that at such election any legal voter of the county was deprived of the privilege of casting his vote, or that any such number of fraudulent votes were cast as would have changed the result.

I. The subject of the provisions of section 852, article 3 of chapter 21, Revised Statutes, 1889, is introduced by the expression, "Whenever it shall become necessary for any county in this state to incur any indebtedness for the purpose of building a courthouse or jail, in excess," etc. In the order of the county court ordering the election in this case, it is not recited that the county court found that it had become necessary to incur such an indebtedness. It is contended for the plaintiffs that such failure in the order is a fatal defect, going to the jurisdiction of the court, that should avoid the proceedings. This is an entire misconception of the spirit and meaning of the statute. The jurisdiction of the county court to order an election is not predicated upon their conviction of the necessity of incurring the indebtedness, but upon the fact that more than one hundred qualified voters and taxpayers of the county, convinced of such necessity, by a proper petition filed in the court, asked that the question be submitted to the qualified voters of the county. The object of the proceeding is not to take the judgment of

the county court as to the necessity, but that of the qualified, voters of the county. Consequently the court was not called upon or required to make or record a. finding upon that subject before the tribunal, to whom the law had committed the question of such necessity, had spoken.

II. Section 853 of the statute requires that the court "shall cause at least twenty days' notice of said election to be given by publication in some newspaper published in the county," etc. That notice such as is required in this section was in fact given, is abundantly shown by the evidence, and is not disputed. But the records of the county court do not show a finding by that court that such notice had been given; and appellants contend the trial court committed error in permitting this fact to be shown by oral evidence. This point has been so recently and directly ruled against this contention that we deem it unnecessary to discuss it. *State v. Dugan*, 110 Mo. 138.

The notice purported to be given in pursuance of the order of the county court and was signed by the clerk in her official capacity. Upon the authority of the same case it sufficiently appears that such notice was caused to be given by the county court.

III. The election was conducted under the general election law of the state (Revised Statutes, 1889, chapter 60, article 1), and not in conformity with that law as amended by the provisions of article 3 of said chapter, and further amended by an act approved April 4, 1891, generally known as the Australian ballot law, and for this reason it is urged the election is void.

Section 855 of the law (Revised Statutes, 1889, ch. 21, art. 3) under which these proceedings were had. is as follows:

"The election herein provided for shall be held and conducted in the same manner, and the returns

thereof made to the county clerk and the vote counted, in all respects the same as in elections for state and county officers, as far as the laws in relation thereto are applicable and the county clerk and justices associated with him to count said vote shall certify the result of the election to the county court at its next regular session thereafter.''

This section was first adopted in 1879 (Laws, 1879, sec. 6, p. 194). At that time the general election law was substantially the same as it now appears in article 1 aforesaid. And the respondents contend that the election was properly held under the general election law as it read at the time this statute was passed. The general rule governing in such cases seems to be, that where one statute refers to another for rules of procedure prescribed by the former, the former statute if specifically referred to, becomes a part of the referring statute, and the rules of procedure prescribed by the earlier statute so far as they form a part of the second enactment, continue in force, although the earlier statute be afterwards modified or repealed. But when the subsequent statute, being a general one, does not refer specifically to a former statute for the rule of procedure to be followed, but generally to the established law, by some such expression as ''the same as is provided for by law'' in given cases, then the act becomes a rule for future conduct to be found when needed by reference to the law governing such cases at the time when the rule is invoked. Endlich on Interpretation of Statutes, sec. 493; *Kugler's Appeal*, 55 Pa. St. 123; *Jones v. Dexter*, 8 Fla. 276; *McNight v. Crinnion*, 22 Mo. 559.

The cases cited by respondents as militating against this rule will be found on examination not to be within it, as for example *Com. v. Kendall*, 144 Mass. 357, where

the earlier statute was specifically adopted by the number of its chapter and section; or, *In re Heath*, 144 U. S. 92, where the adopting statute was a special one for a local court, and so with the others. The question. in such cases always turns however upon the intention of the legislature in a given case.

We have quite a number of statutes in this state like the one under consideration for taking a vote, "as in elections for state and county officers.". Revised Statutes, 1889, secs. 362, 4598, 4754, 8443 and others. And there can be no doubt that in all such cases the intention of the legislature was that the election should be held in conformity with the provisions of the general election law as it stands at the time the election provided for is held. It cannot be that the legislature intended that in each of the several elections thus provided for the election law as it may have stood at the time of the adoption of each is to be the rule of conduct for such election. Such a construction would be intolerable and destructive of that simplicity and uniformity in the conduct of elections which is so essential to the intelligent expression of the public will. The legislative will in regard to such elections as the one in hand is manifested by the provisions of the general election law as it stood at the time of the election, which was held about twenty days after the amendments of 1891 went into effect.

In the original article introducing in this state the Australian ballot system, "special elections held in only one county". were expressly excluded from its operation by section 4792 of that act. By the act of 1891, this section was repealed in direct terms (Laws 1891, sec. 1, p. 134), and in the new section adopted in its stead, excluding elections for certain public offices from the operation of the act (the exception), "special elec-

tions held in only one county was omitted (Laws, 1891, sec. 12, p. 136), and a new section adopted as follows:

"Section 14. The provisions of this article as amended shall apply to all the election precincts in this state."

In view of this action it cannot be doubted that it was the intention of the legislature that all elections for public offices in this state, except those excepted by section 12, *supra*, should come under the operation of article 3 as amended by said act, and that that act furnished the rules of procedure for the election in question here, so far as the same was applicable to such an election (section 855, *supra*), which required that such election should be held and conducted "in all respects the same as in elections for state and county officers as far as the laws in relation thereto are applicable."

There are of course many provisions of the law that are not applicable to an election of this character. With these we have nothing to do. Of those that are, the provisions contained in sections 4756, 4772, 4775, 4776, 4779, 4780, 4781, 4784 and 4785 of article 3, as amended by the law of 1891, made for the purpose of securing freedom of choice and the purity of the ballot, are significant and applicable. The salient features of the system presented by the provisions contained in these sections are that at such an election no ballot shall be cast or counted except one printed at the public expense, provided by public officers, indorsed by two of them in a certain manner, delivered by them to the voter, and by him prepared alone in a certain manner in a private place provided for that purpose, screened from the observation of others, folded so as to conceal the face and expose the indorsement, and forthwith voted before the voter leaves the polling place.

It is conceded that the election in the present instance was held in total disregard of these provisions of the statute; consequently no legal vote was cast or counted at such election. We have here, not merely irregularities in an election held in substantial compliance with the requirement of the law, but an election in which those requirements are wholly ignored and set at nought. Such an election is void and gave no authority for the orders of the court based thereon levying the tax which is sought to be enjoined in this action. *State ex rel. v. McMillan*, 108 Mo. 153; *Bowers v. Smith*, 111 Mo. 45; *State ex rel. v. Frazier*, 98 Mo. 426; *Ledbetter v. Hall*, 62 Mo. 422; *Zeiler v. Chapman*, 54 Mo. 502.

This conclusion renders it unnecessary to consider the other objections urged against the validity of the proceedings subsequent to the election.

IV. We find no error in the ruling of the circuit court adjudging the costs against plaintiffs of the continuance of January 25, 1891, made necessary by the amendment of their petition.

The judgment of the circuit court will be reversed and the cause remanded to the circuit court of Greene county with directions to reinstate the plaintiffs' bill and enter a decree in their favor in accordance with the prayer thereof. All concur, except BARCLAY, J., absent.