THE BARBER ASPHALT PAVING COMPANY, Appellant, *vs.*
THE SOUTH PARK COMMISSIONERS *et al.* Appellees.

*Opinion filed February 20, 1908—Rehearing denied April 10, 1908.*

1. PARKS—*powers of the board of South Park Commissioners
considered.* The provision of section 13 of the act of 1869 un-
der which the board of South Park Commissioners was organized,
which confers upon the board the "power and authority now by
law conferred upon or possessed by the common council of Chicago
in respect to the public squares and places in said city," does not
limit the power of the board, in making improvements, to the same
methods, instruments and agencies to which the council was lim-
ited by the charter of the city then in force.

2. SAME—*South Park Commissioners may let contract without
advertisement if four commissioners so vote.* The provision of
section 56 of the municipal code of the South Park Commissioners
of Chicago which authorizes a contract for a public improvement
·costing more than $500 to be let without advertisement if four of
the five members of the board so vote is not invalid, as not con-
forming to the regulations governing such matters found in the
provisions of the then existing charter of the city of Chicago.

3. SAME—*South Park Commissioners are not required to pass
annual appropriation ordinance.* The provisions of the charter of
the city of Chicago in force in 1869, at the time of the passage of
the special act under which the board of South Park Commission-
ers was organized, which require the passage by the common coun-
cil of an annual appropriation ordinance in the first quarter of the
fiscal year, do not apply to the board of South Park Commissioners.

APPEAL from the Circuit Court of Cook county; the
Hon. J. W. MACK, Judge, presiding.

TOLMAN, REDFIELD & SEXTON, for appellant.

HOLLETT, SAUTER & HENKEL, JACOB W. LOEB, and
WILLIAM M. PINDELL, (JAMES M. HEAD, of counsel,) for
appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

This was a bill filed by the Barber Asphalt Paving Com-
pany, a tax-payer of the town of South Chicago, against the
South Park Commissioners, its individual members and offi-

cers, the Chicago Bitulithic Company and Warren Bros. Company, praying that a certain contract between the South Park Commissioners on the one hand and the Chicago Bitulithic Company and Warren Bros. Company on the other be declared illegal and void, and that the South Park Commissioners, its members, officers and agents, be enjoined from paying to the other parties to the contract any money under its provisions. A motion for a temporary injunction was denied by the court, and an injunction being the only relief sought, the court thereupon dismissed the bill for want of equity. The validity of a municipal ordinance being involved, the judge certified that in his opinion the public interest required that this case be taken directly to the Supreme Court, whereupon the complainant prayed for and was allowed an appeal to this court.

The contract sought to be annulled provided for the construction of certain pavement in Michigan avenue, Thirty-third street and South Park avenue, and the ground on which it was attacked was that it was not let to the lowest responsible bidder after advertisement.

Section 56 of the municipal code of the South Park Commissioners provides as follows: "All contracts exceeding in amount the sum of $500 for work, materials or supplies shall be let by the commissioners, after advertisement, to the lowest trustworthy and responsible·bidder, such advertisement in all cases to reserve the right to reject any and all bids: *Provided, however,* that such contract may be let without advertisement if authorized by a vote of four commissioners."

The amount of the contract largely exceeded $500. It is claimed that the charter of the South Park Commissioners requires all contracts for public improvements, when the expense exceeds $500, to be let to the lowest responsible bidder after public advertisement, and that the proviso authorizing the letting of a contract exceeding $500 without advertisement is therefore void.

The South Park Commissioners is a municipal corporation organized by virtue of a special act of the General Assembly. (1 Private Laws of 1869, p. 358.) The act provides for the organization of the corporation; the acquiring by it, through gift, purchase or condemnation, of certain lands to be held, managed and controlled as a public park; for the borrowing of money and issue of bonds, and for the annual levy of a tax for the payment of interest and the expense of the improvement, maintenance and government of the park. The corporation consists of five commissioners appointed by the Governor. The officers required by the act are a president and an auditor, (who must be commissioners,) a secretary and a treasurer. To the five commissioners thus appointed is given the entire management, direction and government of the park by section 13 of the enabling act, in the following words:

"Sec. 13. The said board shall have the full and exclusive power to govern, manage and direct said park; to lay out and regulate the same; to pass ordinances for the regulation and government thereof; to appoint such engineers, surveyors, clerks and other officers, including a police force, as may be necessary; to define and prescribe their respective duties and authority; fix the amount of their compensation; and generally, in regard to said park, they shall possess all the power and authority now by law conferred upon or possessed by the common council of the city of Chicago in respect to the public squares and places in said city; and it shall be lawful for them to commence the improvement of said park as soon as they have obtained one hundred acres of the premises herein prescribed."

The powers, at the time of the passage of the act, conferred upon or possessed by the common council of the city of Chicago were those derived from the city charter. (Private Laws of 1863, p. 40.) In section 1 of chapter 7, and in numerous paragraphs in section 8 of chapter 4 of the charter, power is given to the common council over the pub-

lic squares and places in the city, which is full and complete
and is specified in great detail. In *McCormick* v. *South
Park Comrs.* 150 Ill. 516, it was held that the South Park
Commissioners were invested by the act of 1869 with pow-
ers generally at least as full and exclusive in regard to the
park as those conferred upon or possessed by the city coun-
cil of Chicago in respect to public squares and places in said
city, each holding by the same kind of tenure, and in relation
to the respective subject matters the one clothed with powers
identical in extent with those vested in the other.

While the city charter conferred upon the common coun-
cil full authority over the public squares, grounds and streets
of the city, it also created an independent executive depart-
ment of the municipal government known as the board of
public works, composed of the mayor and three commission-
ers, elected in the same manner as other city officers, for a
term of six years, one from each of the north, south and
west divisions of the city. In 1867 the method of selection
of the commissioners was changed, and thereafter they were
appointed by the mayor with the advice and consent of the
council. The common council could exercise its power and
authority over the streets only by means of general ordi-
nances, and, subject to such general ordinances, the board
of public works had exclusive and special charge and super-
intendence, among other things, of all streets, walks and
cross-walks, and public places, grounds, parks and buildings,
except school houses; of all lamps and lights for lighting
the streets, parks, public places and buildings, and of the
erection and repair of such lamps and lights and of all pub-
lic improvements by the city. Chapter 6 of the charter is
devoted to the board of public works, sections 15, 16 and 20
of which chapter, so far as now material, read as follows:

"Sec. 15. Whenever any public improvement shall be
ordered by the common council of said city, and the assess-
ment for the same (where the same is to be paid for by spe-
cial assessment,) shall have been confirmed and one-half of

such special assessment shall have been paid into the city treasury, the said board of public works shall advertise for proposals for doing said work. * * * The bids for the doing of such work shall be sealed bids, directed to said board. * * * Said bids shall be opened at the hour and place mentioned in said notice. When the expense of any work or public improvement shall exceed the sum of $500, and the same is to be paid out of the general fund or the water or sewerage fund of said city, the doing of such work shall be let by contract, in the same manner as is provided in cases where the expense of the same is to be paid for by special assessment.

"Sec. 16. All contracts shall be awarded by said board to the lowest reliable and responsible bidder or bidders who shall have complied with the above requisition.

"Sec. 20. Whenever the said board of public works shall deem it necessary for the interests of the city and to protect the same from great loss and damage, they shall report to the common council such necessity and the reason for the same, asking from the council power to enter into a contract (specifying such contract) without giving the notice in this act required to be given before letting a contract; and the common council, on being satisfied of such necessity, may, by resolution, grant such power: *Provided,* three-fourths of all the aldermen elected shall vote in favor of said resolution."

Clause 14 of section 1, chapter 5, of the supplementary act of March 9, 1867, (Private Laws of 1867, p. 772,) in enumerating the powers of the common council, reads as follows: "To direct and require the board of public works to let the cleaning of the streets, alleys, lanes and highways, or ordinary repairs of the same, or any portion or part thereof, to the lowest reliable and responsible bidder or bidders, the said letting and contracts to be in all respects governed by the provisions of the law in regard to the letting of contracts for improving the streets: *Provided, however,* it shall

require two-thirds of all the aldermen elected to pass any such ordinance, such vote to be taken by ayes and noes and entered on the records of the council."

The appellant claims that the regulations governing the letting of contracts by the board of public works contained in the foregoing extracts from the city charter were engrafted upon the act creating the South Park Commissioners by force of the clause in section 13 granting to the commissioners all the power and authority conferred upon or possessed by the common council in respect to public squares and places. It is argued that the power and authority of the council are limited by these provisions, and the power and authority of the commisioners being identical with those of the council are also limited by these same provisions. We do not accede to this construction. The expression, "all the power and authority now by law conferred upon or possessed by the common council of the city of Chicago in respect to public squares and places in said city," refers to the grants contained in various parts of the city's charter of power to regulate and control the public squares and places, preserve order and punish disorderly conduct or other offenses therein, prevent encroachments, lay out, vacate, keep in repair and clean streets and walks, construct, improve and light the same, and pass ordinances and make and enforce rules to carry these powers into effect, but it was not intended to limit the commissioners in the exercise of these powers to the same manner, the same instruments and the same methods by which the council was limited. The organization of the two corporations, the city and the park commissioners, was entirely different. The government of the city was divided among a number of independent departments. Both the council and South Park Commissioners had power to lay out and improve streets. The council could only do so through the board of public works. It could not initiate a public improvement. All propositions to that end were required to be made to the board of public works, or

if made to the council, to be referred to the board. Without its report and estimate the council was without power to act. When the improvement was ordered the council was without power to make any contract. The letting of the contract was done by the board of public works, not under the direction of the council but independently, and in the supervision and acceptance of the work and the payment therefor the board was independent of the council. The carrying out of the work was the office of the board and was done by it under the independent authority given by the charter. The council's control could only be exercised by the passage of general ordinances. It will be seen that it would be impossible to adapt such a scheme to an organization so dissimilar as that of the park commissioners. The whole organization there was the five commissioners. There was no other board to originate or carry out improvements, make contracts, oversee their execution or concern itself with the affairs of the corporation. These things must be done personally by the commissioners or not at all. The provisions of the city charter as to the manner, the instrumentalities and the methods of originating and executing improvements were so foreign and so little adaptable to the organization of the South Park Commissioners that the legislature could not have intended them to apply to that board.

The act creating the South Park Commissioners a municipal corporation contains no requirement that an appropriation bill shall be passed in the first quarter of the fiscal year or at any other time. The provisions of the city charter of Chicago in regard to the necessity of an appropriation for an expenditure before that expenditure can be incurred do not apply to the South Park Commissioners.

These are the only points discussed by appellant. The decree will be affirmed.

*Decree affirmed.*