## STATE OF MISSOURI, Respondent, v. SOL PHILLIPS, Appellant.

### Kansas City Court of Appeals, May 22, 1916.

1. **LOCAL OPTION: Jurisdiction: Polling Places.** The defendant was indicted and convicted for a violation of the Local Option Law in that he sold beer to the prosecuting witness. The defendant contended, first, that the sale was not made within one year preceding the finding and return of the indictment; second, that the court had no jurisdiction to try the cause at the term in which the verdict was rendered, because the clerk had failed to enter into the record the minutes that the court had adjourned from May 29, 1915, to June 28, 1915; (The court thereafter ordered a *nunc pro tunc* entry.) third, that the record fails to show that prohibition was in force in the

county at the time of the alleged offense. *Held*, that no preju-
dicial error was committed against the defendant.

2. **NUNC PRO TUNC ENTRY:** ————. The rule is well set-
tled that while the record of the court stands as a perpetual
memorial of the court's actions and proceedings and cannot be
impeached by oral evidence, yet where the clerk, either by de-
sign or mistake fails to record the judgment or order actually
rendered or made, the court, *nunc pro tunc* may correct the rec-
ord to make it show the judgment pronounced or the order actu-
ally made, provided facts appear of record supporting such cor-
rection.

Appeal from Adair Circuit Court.—*Hon. Chas. H. Stewart*, Judge.

AFFIRMED.

*Mills & Mills* for respondent.

*J. E. Reiger* for appellant.

JOHNSON, J.—Defendant was indicted, tried and
convicted for a violation of the Local Option Law
which, the indictment alleged, was adopted in Adair
county outside the city of Kirksville, in February,
1908, and since then has been in full force in that
county. The State introduced a witness who testified,
in support of the charge in the indictment, which was
returned February 1, 1915, that on or about January
1st, of that year—he could not remember the exact
date—he bought a bottle of beer from defendant at
the latter's place of business in Novinger, for which
he paid defendant twenty-five cents. We find the evi-
dence sufficient to show a sale of intoxicating liquor
within one year next preceding the finding and return
of the indictment, and the point to the contrary urged
by defendant is disallowed.

Before the case was tried defendant filed a plea
to the jurisdiction of the court to try the cause at that
term, the ground of the attack being that the term

had closed and the court had adjourned to court in course. After hearing evidence on the plea the court overruled it and defendant was compelled to go to trial. We are asked to reverse that ruling and to hold that the court had no jurisdiction to try the cause and render judgment against defendant at that term.

This case and many others of the same kind were on the docket for the May, 1915, term of the Adair circuit court. The record introduced in evidence at the hearing of the plea showed the court was in regular session from day to day until May 29, 1915, and from that date and was not reconvened until June 28th. It appears from the oral evidence that in adjourning on May 29th the court announced an adjournment to June 28th, on which date and the day following, the present case and ten or eleven other like cases had been set for trial. This setting of the cases had been made in open court before the adjournment on May 29th, and was evidenced by a memorandum entered at the time in each case on the Judge's docket, "set for June 28, 1915," or "set for June 29, 1915," about half of the cases being assigned to each of the two mentioned days. All of the interested parties and their counsel and witnesses appeared in court when it was reconvened and no point is made that the several defendants were ignorant of the setting of their cases and were not prepared to go to trial.

There is no doubt that the order of adjournment to June 28th was made in open court on May 29th and was omitted from the record by the mistake or oversight of the clerk. The cause for the adjournment was the advent of a regular term of court in another county in the circuit which the Judge found it necessary to convene and hold. On overruling the plea to the jurisdiction the court made a *nunc pro tunc* order that "the record at page 137 show the adjournment of

this court from May 29, 1915 to June 28, 1915.'' We hold no error was committed in entering the *nunc pro tunc* order and in overruling the plea to the jurisdiction.

The rule is well settled that while the record of the court stands as a perpetual memorial of the court's actions and proceedings and cannot be impeached or contradicted by oral evidence, yet where the clerk, either by design or mistake fails to record the judgment or order actually rendered or made, the court, *nunc pro tunc* may correct the record to make it show the judgment pronounced or the order actually made, provided facts appear of record supporting such correction.

To say otherwise would be to hold, in effect, that the clerk, a mere ministerial officer, by misprision, or mistake, could exercise judicial functions and thereby obstruct and pervert the proper and orderly administration of justice. [Saxton v. Smith, 50 Mo. 490; Jones v. Hart, 60 Mo. 351; K. C. Pump Co. v. Jones, 126 Mo. App. 536; Kreisel v. Snavely, 135 Mo. App. 156.] Any sort of record evidence will afford an evidentiary basis for such correction of the record (see cases just cited). If the facts appear of record, or on the minutes of dockets of the court or from the papers on file (Saxton v. Smith, supra) that is sufficient. In the present case the memoranda on the Judge's docket, in his handwriting, showing that these cases were set for trial on June 28th and June 29th constituted record evidence of an adjournment to June 28th instead of to court in course and were sufficient to support the correction *nunc pro tunc*.

Further defendant argues the record fails to show that prohibition was in force in the county at the time of the alleged offense. The proof that the Local Option Law was put into force in the county, outside of Kirksville, pursuant to the election in 1908, is com-

plete unless defendant is right in saying that the election was void "because the record shows that the usual voting places as called for in the notice were not in any wise fixed but were at one place and then at another . . . and that in addition to this, Benton township outside of Kirksville, voted within the city." The notice of election corresponded to the order which in the language of the statute (sec. 7238) called for an election to be held at the usual voting precincts for holding any general election for State officers. The election was held in every voting precinct, but in many there were no fixed polling places, and pursuant to the practice followed in general elections for State officers, polling places were provided for that election which had not been so used at any preceding election. It will be noted that the statute does not require either the order or notice to designate the polling places but to state that the election will be held at the usual voting precincts. The word precinct refers to a territorial subdivision, not to the polling place therein and the meaning of the statute is that the election must be held in all the precincts of the whole territory to be affected by the election—in this instance the county, outside the City of Kirksville, a city of more than 2500 inhabitants.

It is aptly said in State ex rel. v. Ross, 160 Mo. App. l. c. 693:

"To the general proposition that time and place are of the substance of an election we give our unqualified assent, and if the statute in terms required the polling places to be designated in the order for the election, or the notice of election, we should hold such a provision mandatory, and an election held without this provision being complied with void. As we view it, the things upon which jurisdiction to hold such an election as this rests are, a proper petition, an order for the election and notice of the election. If

all these are in substantial compliance with the statute, then jurisdiction attaches and up to this point all specific provisions of the statute should be held mandatory and a substantial compliance with its terms required. [Thornburg v. School District, 175 Mo. 12, 75 S. W. 81; Martin v. Bennett, 139 Mo. App. 237, 122 S. W. 779; State ex rel. v. Martin, 83 Mo. App. 55; People ex rel. McCune, v. Weller, 11 Cal. 181; Russell v. McDowell (Cal.), 23 Pac. 183; Gaston v. Lamkin, 115 Mo. 20, 21 S. W. 1100; Johnston v. Robertson (Ariz.), 76 Pac. 465; State ex rel. v. Salt Lake City (Utah), 99 Pac. 255.] "

It appears that polling places were provided in every precinct and that no qualified voter was misled or in any manner deprived of an opportunity to cast his vote. In view of the fact of which we may take judicial notice that many precincts throughout the State have no permanent polling places, the contention of defendant, if adopted by the courts, would nullify most, if not all, of the local option elections which have been held in the State and would be contrary to the legislative intent expressed in the statute.

The polling places for Benton township in which Kirksville is contained were in the city. We are not advised by defendant of any reason supporting his view that they should have been established in the township outside the city. So far as the record discloses residents of the city did not vote nor was any qualified voted deprived of his right to vote. At general elections the polling places for the township were in the city. We must assume they were thus located with a view to serving the convenience of the qualified voters and we know of no law which forbade the election officers making the same or similar provisions for local option elections as for general elections.

A second local option election was held in Adair county in 1912, with the same result, i. e. the adop-

tion of county prohibition. Defendant argues, in substance, that this election superseded the adoption of local option pursuant to the election of 1908, and that the election of 1912 was void because the notice of the result thereof was not published as required by the order of the county court. The unsoundness of this reasoning is apparent. We need not pronounce our opinion on the subject of the sufficiency of the publication. The adoption of prohibition under the election of 1908 put the law into force and continued it in force and the holding of a subsequent election could not have the effect of suspending or destroying it until the results of such subsequent election were put in force in the manner prescribed by law.

Other questions raised by defendant are answered in our opinions filed at this term in State v. Nardini, State v. Giogetti and State v. Howerton. A careful examination of the record has convinced us that no prejudicial error was committed against defendant. The judgment is affirmed.

All concur.