(No. 19773.

JOHN K. HAAS, JR., *et al.* Plaintiffs in Error, *vs.* THE COM-
MISSIO'NERS OF LINCOLN PARK *et al.* Defendants in
Error.

*Opinion filed April 17, 1930—Rehearing denied June 5, 1930.*

URBAN A. LAVERY, and WALTER T. QUIGLEY, for plaintiffs in error.

COOKE, SULLIVAN & RICKS, MILTON J. FOREMAN, and WILLIAM H. BECKMAN, (GEORGE A. COOKE, EDWARD H. FIEDLER, and GEORGE E. WOODS, of counsel,) for defendants in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

John K. Haas, Jr., Harry Lapp and Cacelia Hart, citizens, residents and tax-payers, filed in the circuit court of Cook county an amended bill to set aside four contracts by which the Great Lakes Dredge and Dock Company undertook to construct a breakwater and to do certain filling for the Commissioners of Lincoln Park. The complainants further sought to enjoin the company from doing any work under the contracts, and to enjoin the park commissioners and their secretary and treasurer from issuing any warrants or making any payment for such work. General and special demurrers were filed by the defendants, and the demurrers were sustained. The complainants elected to abide by their amended bill, and a decree was rendered dismissing the bill for want of equity. Since the validity of a statute is involved in this case the complainants prosecute a writ of error from this court.

It is alleged in the amended bill that the Commissioners of Lincoln Park constitute a municipal corporation created by an act of the General Assembly entitled "An act to fix the boundaries of Lincoln Park, in the city of Chicago, and provide for its improvement," approved and in force February 8, 1869, (1 Private Laws of 1869, p. 368) ; that the act vests the commissioners with certain powers and imposes certain duties upon them; that, in defining the duties of the commissioners, the twenty-third section of the act provided that "it shall be the duty of said commissioners to let all work exceeding in amount twenty-five hundred ($2500) dollars by contract, in the manner provided in the charter of the city of Chicago for letting contracts for public improvements;" that an act entitled "An act to reduce the charter of the city of Chicago and the several acts amendatory thereof into one act, and to revise the same," approved and in force February 13, 1863, (Private Laws of 1863, p. 40), constituted the charter of the city of Chi-

cago in effect at the time of the passage of the act of February 8, 1869; and that, with respect to the duties of the Commissioners of Lincoln Park, the following provisions of the same charter are still in force and effect: "Whenever any public improvement shall be ordered by the common council of said city, and the assessment for the same (where the same is to be paid for by special assessment), shall have been confirmed, and one-half of such special assessment shall have been paid into the city treasury, the said board of public works shall advertise for proposals for doing said work; a plan or profile of the work to be done, accompanied with specifications for the doing of the same, being first placed on file in the office of said board; which said plan, profile and specifications shall at all times be open for public inspection; which advertisement shall be continued for at least ten days in the corporation newspaper, and shall state the work to be done. * * * When the expense of any work or public improvement shall exceed the sum of $500, and the same is to be paid out of the general fund, or the water or sewerage fund, of said city, the doing of such work shall be let by contract, in the same manner as is provided in cases where the expense of the same is to be paid for by special assessment" (section 15, chapter 6); "All contracts shall be awarded by said board to the lowest reliable and responsible bidder or bidders" (section 16, chapter 6), and "No contracts shall be hereafter made by the common council or any committee or member thereof, and no expense shall be incurred by any of the officers or departments of said city government, whether the object of expenditure shall have been ordered by the common council or not, unless an appropriation shall have been previously made concerning such expense" (section 43, chapter 5). Private Laws of 1863, pp. 78, 74.

It is further alleged in the amended bill that the Great Lakes Dredge and Dock Company is a New Jersey corporation having its principal office in the city of Chicago; that

the Commissioners of Lincoln Park made three contracts with the dredge and dock company for the extension and improvement of Lincoln Park; that the first of these contracts, dated August 20, 1926, required the construction of 6000 lineal feet of breakwater and the deposit of 700,000 cubic yards of filling between the breakwater and the existing shore at a total cost of $1,201,580; that the second, dated August 10, 1927, required the construction of 2000 lineal feet of breakwater and the deposit of 1,500,000 cubic yards of such filling at a total cost of $1,195,500; and that the third, dated October 24, 1927, required the construction of 6000 lineal feet of breakwater at a cost of $801,500; that the advertisements for bids which resulted in the first and second contracts appeared in the *Chicago Evening American* on Saturday, July 31, 1926, and on Saturday, July 23, 1927, respectively, but only in a certain edition and not in all the editions of that newspaper on the days stated, and that the third contract was made without any advertisement for bids except the advertisement pursuant to which the second contract was let, two and one-half months before.

The plaintiffs in error charge that with respect to each of the three contracts the park commissioners failed to prepare adequate and proper plans or profiles of the work to be done in advance of the advertisements for bids; that they refused to keep the plans or profiles open for public inspection; that they denied a competing contractor information concerning the work to be done and notified him that the work required by the second and third contracts would not be considered or awarded during the year 1927; that the advertisements not only omitted to give sufficient information concerning the proposed work, but that they were secret and collusive and were purposely designed to be seen and read by the fewest possible number of persons and competing contractors, and that, while the park commissioners advertised for bids for the construction of a break-

water only, yet they proceeded to contract for filling, in addition to the building of the breakwater, to the extent of $1,802,000.

The plaintiffs in error further allege in their amended bill of complaint that notwithstanding the illegality of the foregoing contracts, the park commissioners on November 15, 1928, entered into another contract with the Great Lakes Dredge and Dock Company for the delivery for filling purposes of material dredged from the new channel of the Chicago river; that this contract was made without any advertisement for bids or the receipt of any bids whatever; that the material contracted for is known as waste or dumpage and readily can be secured in large quantities without cost or charge; that nevertheless, the commissioners obligated themselves to pay the Great Lakes Dredge and Dock Company upwards of $520,000 therefor and that the company claims there is already owing to it under that contract in excess of $200,000.

It is alleged that although the time fixed for the completion of the work has expired, yet none of the contracts has been completed and much work remains to be done; that payments by the commissioners to the Great Lakes Dredge and Dock Company under the several contracts will constitute an illegal diversion of public funds and will cause irreparable damage to the tax-payers of the park district and that the appellants had no knowledge or information of the illegality of the contracts until July, 1929.

On the argument of the demurrers, it was agreed by the parties, first, that the Commissioners of Lincoln Park, on October 13, 1920, adopted and thereafter printed and published an ordinance codifying their general ordinances, section 27 of chapter 4 of which was as follows: "All contracts exceeding the amount of $500 for work, materials or supplies, or other public improvements, shall be let by the commissioners, after advertisements, to the bidder regarded by the commissioners as being the lowest trustworthy

and responsible bidder. Such advertisement shall appear at least once in some local newspaper or technical publication not less than ten days nor more than fifteen days before the time set for receiving the bids, and in all cases the right to accept or reject any and all bids or parts thereof shall be reserved by the commissioners. Such contract, however, may be let without advertisement if approved by a majority of the commissioners;" second, that on October 13, 1926, the commissioners again revised and codified their ordinances, retaining section 27 of chapter 4, except that, by the revision, advertisements for bids were required upon all public work or improvements involving an expenditure in excess of $2500, and the publication of the advertisement for bids was required to be at least fifteen days, instead of not less than ten nor more than fifteen days, before the time set for receiving bids; third, that section 27 of chapter 4, as revised on October 13, 1926, is still in force and effect; and fourth, that the court should take judicial notice of the existence of the ordinances during the respective periods stated.

The plaintiffs in error contend that the circuit court erred in sustaining the demurrers to the amended bill and in support of that contention they argue that the act of February 8, 1869, incorporated by special reference the provisions of the charter of the city of Chicago then existing with respect to the letting of a contract for a public improvement involving an expenditure in excess of $2500; that, since the powers of the Commissioners of Lincoln Park are conferred by statute, if, in letting a contract for a public improvement, they fail to comply with any statutory requirement, their action is void and the contract is a nullity, and that, in such a case, the contractor cannot enforce the contract even if it has been partially or completely performed. Certain facts alleged in the amended bill and admitted by the demurrers, they assert, establish the illegality and non-enforceability of the several contracts. The prin-

cipal facts upon which they rely are, that no advertisement for bids was published more than once; that none of the advertisements stated the work to be done because no information concerning the location, extent, character or dimensions of the breakwater was given and no reference whatever was made to filling although the commissioners contracted therefor at an additional cost of $1,802,000, and that no plans, profiles or specifications of the proposed improvement were kept on file or open to public inspection.

The act of February 8, 1869, made it the duty of the Commissioners of Lincoln Park to award all contracts for work involving an expenditure exceeding $2500 in the manner prescribed by the charter of the city of Chicago for letting contracts for public improvements. Every person is presumed to know the extent of the powers of a municipal corporation, and is required to take notice of the limitations upon those powers. Where the charter prescribes how a municipal corporation shall make a contract, that method is considered to be exclusive and must be followed, and if it is not observed the contract is invalid and unenforceable. (*DeKam* v. *City of Streator*, 316 Ill. 123; *City of Chicago* v. *Hanreddy*, 211 id. 24; 3 McQuillin on Mun. Corp.—2d ed.—pp. 836, 837). The Commissioners of Lincoln Park could not by the passage or revision of an ordinance supersede a statutory restriction upon the exercise of one of their charter powers. If the provision of the act of February 8, 1869, with respect to letting contracts for public improvements is in force, then the contracts in question, which, according to the admitted allegations of the bill, were made in violation of the requirements of that provision, are necessarily void and unenforceable.

The defendants in error, however, contend that the organization and functions of the Commissioners of Lincoln Park on the one hand, and of the city council and the board of public works of the city of Chicago on the other, are so essentially dissimilar that it is impossible to apply

the provisions of the city charter of 1863 to the park commissioners, and that the act of February 8, 1869, is, in consequence, vague, indefinite and incapable of reasonable or practical execution, and therefore void. To support this contention, *Barber Asphalt Paving Co.* v. *South Park Comrs.* 233 Ill. 362, is cited. Unlike the act creating the Commissioners of Lincoln Park, the act which created the South Park Commissioners contained no provision making it their duty to let contracts for public improvements requiring an expenditure exceeding $2500 in the manner prescribed by the charter of the city of Chicago. No similar limitation or restriction was imposed upon the powers of the South Park Commissioners. They were vested with "all the power and authority now by law conferred upon or possessed by the common council of the city of Chicago in respect to the public squares and places in said city," and it was held that this provision had reference to the grants in the city's charter of power to regulate and control the public squares and places but that it was not intended to restrict them in the exercise of those powers to the methods by which the city council was limited. In letting contracts for the construction of public improvements, the Commissioners of Lincoln Park are so restricted by the act of February 8, 1869, and the defendants in error fail to show, and no reason is perceived, why the park commissioners, as well as the city of Chicago, may not place on file and keep open for public inspection, a plan or profile, accompanied by specifications, of the work to be done, and advertise for proposals for doing the work during a period of at least ten days. The validity of the act of February 8, 1869, cannot be successfully challenged on the ground that, with respect to prescribing the method of awarding contracts for public work, it is vague, indefinite and incapable of execution.

It is further contended by the defendants in error that even if the charter of the city of Chicago governs the Com-

missioners of Lincoln Park in letting contracts for public work, it is the charter contained in the existing Cities and Villages act which has been adopted by the city of Chicago, and not the charter of 1863, which was effective when the act of February 8, 1869, creating the Commissioners of Lincoln Park was passed. The general rule is, that an act, which adopts by reference the whole or a portion of another statute, adopts the statute or such portion as then exists, and does not include subsequent additions or modifications of the statute adopted, unless it does so by express or strongly implied intent. (*Culver* v. *People*, 161 Ill. 89; *Kendall* v. *United States*, 12 Pet. 524; *Darmstaetter* v. *Moloney*, 45 Mich. 621; *Knapp* v. *Brooklyn*, 97 N. Y. 520; *Matter of Main Street*, 98 id. 454). This rule, however, applies only where the adopting statute makes reference to a particular act by its title or by some other specific description. Where the adopting statute makes no such particular reference, but refers generally to the law relating to or governing the subject under consideration, the adoption by reference will be regarded as including not only the law in force at the time the adopting act became effective, but also the law in force when the action or proceeding in question is taken. (*People* v. *Kramer*, 328 Ill. 512; *Snell* v. *City of Chicago*, 133 id. 413; *Culver* v. *People, supra; Jones* v. *Dexter*, 8 Fla. 276; *Gaston* v. *Lamkin*, 115 Mo. 20; 2 Lewis' Sutherland on Stat. Const. sec. 405; Endlich on Interp. of Statutes, sec. 493). The act of February 8, 1869, referred specifically to the charter of the city of Chicago, which, as it then existed, was the revision of 1863. It made no reference to a general law for the letting of contracts for public improvements. The legislative intention was to make the pertinent provision of the existing charter of the city of Chicago a fixed and definite law governing the Commissioners of Lincoln Park in making contracts of the character stated. The method to be followed was definitely ascertainable from the city charter

and nothing in the reference indicates that the rule of conduct would be found in the general law as it might exist from time to time.

Assuming that the charter of the city of Chicago as enacted in 1863 applies by reference to the Commissioners of Lincoln Park in the letting of certain contracts, yet, the defendants in error argue, it has no application to the contracts in question because the cost of the work to be done was not to be paid in a manner prescribed by section 15 of chapter 6 of that charter, namely, by special assessment or out of the water, sewerage or general fund. The cost of the improvements described in the several contracts, it is argued, has been in part and will be wholly paid out of money derived from the sale of bonds. The transcript of the record fails to disclose that such is the fact. If immediate provision to meet the cost of the improvements was made by the sale of bonds issued by the park commissioners, the source of their ultimate payment, nevertheless, will be general taxation; and, unless the law specifically provides otherwise, the lawful obligations of a municipal corporation are payable out of its general funds. (5 McQuillin on Mun. Corp.—2d ed.—sec. 2337). Nor would the special or peculiar character of the work to be done, if otherwise governed by the statute, justify a departure from the prescribed method of letting contracts therefor. The amended bill is not demurrable upon the ground stated.

The defendants in error further argue that even if it be assumed that the city's charter of 1863 applies to the Commissioners of Lincoln Park, yet the allegations of the amended bill do not show that, with respect to the contracts in question, the park commissioners failed to comply with the applicable provisions of that act. One of the requirements of the charter is that the advertisement for bids upon any proposed public improvement "shall be continued for at least ten days." Such advertisements for bids as the park commissioners caused to be made before letting the

contracts under review, appeared only once in an afternoon edition of a daily newspaper published in the city of Chicago, and the defendants in error argue that a single publication not less than ten days before the opening of the bids satisfies the particular requirement of the charter. The word "for" as used in the particular connection means during or throughout the period specified. (Webster's New Int. Dict.; *Leach* v. *Burr*, 188 U. S. 510; *Liverpool and London and Globe Ins. Co.* v. *Biggers*, 71 Okla. 47; *State* v. *Cherry County*, 58 Neb. 734; 3 Words and Phrases,— 3d ser.—p. 713). The additional word "continued" emphasizes this meaning. The obvious purpose of the provision is to encourage competitive bidding by repeated publications. A single publication, whenever and however made, cannot, in the nature of things, meet the requirement "that the advertisement for bids shall be continued for at least ten days." The plaintiffs in error, in their amended bill, sufficiently charged that the park commissioners failed to solicit bids by the requisite notices before entering into the contracts with the dredge and dock company. It is therefore unnecessary to consider the other omissions charged in the awarding of the contracts. When a bill sets forth various claims for relief and the defendants file a general demurrer to the bill, the demurrer should be overruled if one of the claims is within the jurisdiction and proper for consideration of a court of equity. *Miller* v. *Hale,* 308 Ill. 275; *Kinder* v. *LaSalle County Coal Co.* 301 id. 362; *Barr* v. *Barr,* 273 id. 621.

It is contended by the defendants in error that if the plaintiffs in error ever had a cause of action with respect to the contracts in question, it has been barred by *laches.* *Laches* has been defined to be such neglect or omission to assert a right as, taken in conjunction with the lapse of time more or less great and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity. (*Neidhart* v. *Frank,* 325 Ill. 596; *Troyer* v. *Erdman,* 320 id. 140; *Morse* v. *Seibold,* 147 id. 318;

*O'Brien* v. *Wheelock,* 184 U. S. 450). The defense of *laches* may be interposed by a general or special demurrer where the bill shows *laches* upon its face but fails to set forth facts excusing the delay in the institution of the suit. (*Kerfoot* v. *Billings,* 160 Ill. 563). The contracts in the present case were made in 1926, 1927 and 1928. The original bill was filed on July 18, 1929. In the amended bill the complainants alleged facts sufficient to show the illegality of the contracts, parts of which were not performed. They further alleged that they had no knowledge or information concerning the acts or omissions charged until July, 1929. Mere lapse of time is not a bar to equitable relief where a reasonable excuse for the delay appears from the bill. (*Nelson* v. *Wilson,* 331 Ill. 11; *Duncan* v. *Dazey,* 318 id. 500). The amended bill sufficiently shows why there was not an earlier institution of the present suit and the bill was not demurrable on the ground of *laches.* *Porter* v. *Armour & Co.* 241 Ill. 145; *Schnell* v. *City of Rock Island,* 232 id. 89; *Spalding* v. *Macomb and Western Illinois Railway Co.* 225 id. 585.

It is finally contended that the plaintiffs in error alleged no facts in their amended bill showing any damage to themselves or to the tax-payers of the park district. Facts were alleged, which, if proved, establish the illegality of the several contracts. Equity will enjoin public officers, at the suit of a tax-payer, from expending public funds derived from taxation to carry out a contract let in violation of law. (*City of Springfield* v. *Edwards,* 84 Ill. 626; *Wright* v. *Bishop,* 88 id. 302; *Holden* v. *City of Alton,* 179 id. 318; *Stevens* v. *Henry County,* 218 id. 468; *MacGregor* v. *Miller,* 324 id. 113; *McAlpine* v. *Dimick,* 326 id. 240). The bill on its face shows the right of the plaintiffs in error to maintain this suit, and it is sufficient to require an answer.

The decree of the circuit court is reversed and the cause is remanded to that court with directions to overrule the demurrers.

*Reversed and remanded, with directions.*