R. A. SKELTON and F. A. BRANNOCK, Appellants, v. SAMUEL ULEN.

Division Two, March 9, 1909.

1. **ELECTION CONTEST: Irregularities: No Fraud.** Irregularities committed by the judges and clerks at an election which are not shown to be fraudulent, or instigated by contestee, and in which he in no wise participated or derived any benefit from, and by which his vote was not increased, will not authorize the court to declare the whole vote at the precinct to be void.

2. ———: ———: **Counting: By Blocks.** The taking from the ballot boxes of the tickets one at a time, and the placing of all unscratched ballots of one party in a pile, and all unscratched ballots of another party in a pile, and the counting of them ten at a time, though a separate tally mark is made for each candidate on each, if not instigated by the contestee or in his in-

Skelton v. Ulen.

terest or resulting in his favor, and the count was in fact accurate, is no reason for declaring the election at such precinct illegal and void.

3. ———: ———: **Non-Resident Voter.** Where a few legal voters of another township wrongfully voted in the township in question, but not in sufficient numbers to affect the result if their ballots are thrown out, the election contest will not be upheld.

Appeal from Stoddard Circuit Court.—*Hon. J. L. Fort,* Judge.

AFFIRMED.

*N. A. Mozley* and *Wammack & Welborn* for appellants.

(1) The election contested was held in utter disregard of the law in force at the time, governing the holding of elections and commonly known as the Australian Ballot Law, and was therefore invalid. State ex rel. v. Seibert, 116 Mo. 415; Hall v. Schoenecke, 128 Mo. 661. (2) The controlling object of the Australian Ballot Law is to secure an absolutely secret ballot. Every positive requirement which, if disobeyed, would necessarily defeat this object, should be held mandatory. Hall v. Schoenecke, 128 Mo. 661.

*Geo. W. Munger* and *Wilson Cramer* for respondent.

(1) Declarations of law 2 and 4 were properly refused by the court: (a) Because they seek to disfranchise honest voters for alleged illegal and irregular acts of public officials over whose conduct the voters had no control. State ex inf. v. Roberts, 153 Mo. 112; Sanders v. Lacks, 142 Mo. 255. (b) Because, there being no positive statutory provision that the doing of the acts complained of shall invalidate the whole vote cast at the precinct where said acts are done,

the vote cannot be thrown out. Hope v. Flentge, 140 Mo. 390; Sanders v. Lacks, 142 Mo. 255. (2) The court, finding against contestant on his first declaration of law, necessarily found that said election was conducted in substantial compliance with the provisions of articles 1 and 2, chapter 102, R. S. 1899, and having found this fact, the finding will not be disturbed on appeal. Hope v. Flentge, 140 Mo. 398; Lankford v. Gebhart, 130 Mo. 621. (3) When the court gave contestant's declaration of law numbered 3 and then found against him, it necessarily found that the "primary objects of said election law," i. e., to preserve the freedom and independence of the voter and the secrecy of the ballot, had been complied with. (4) The acts complained of, if perpetrated, did not "violate the spirit of the law," that is, they did not prevent the ballot from being a secret one. Therefore, they were not enough to even throw out an individual vote, much less a whole precinct made up of honest votes cast by unsuspecting and honest voters. Hall v. Schoenecke, 128 Mo. 561.

BURGESS, J.—This is an action, begun in the circuit court of Stoddard county, to contest the election of Samuel Ulen to the office of collector of the revenue of said county at the general election held on November 8, 1904.

At said general election the contestants, R. A. Skelton and F. A. Brannock, were the nominees respectively of the Socialist and Democratic parties, and the contestee, Samuel Ulen, the nominee of the Republican party, for said office. According to the returns from said county, Brannock received 2,115 votes; Skelton, 133 votes, and Ulen, 2,271 votes. Upon these returns, the certificate of election was issued to Ulen, who qualified and assumed charge of the office.

In due time after the election, Skelton and Brannock jointly instituted this proceeding, and at the September term, 1905, of said court, the matter was heard, and judgment rendered in favor of the contestee, from which judgment, after an ineffectual motion for a new trial, the contestants appealed.

The election of Ulen is contested on the ground of alleged irregularities at Dexter precinct, in Liberty township, said county, where 252 votes were cast and counted for Brannock, 36 for Skelton, and 446 for Ulen, a total of 734; and the effort is made to have the entire vote of this precinct rejected, in which event Brannock would be entitled to the office as being the recipient of the largest number of legal votes cast in said county for said office.

The grounds of contest as set up by the contestants are, in substance, as follows:

1. That the election judges at Dexter precinct wilfully and fraudulently admitted persons other than the judges and clerks of election into the room where the ballots were being counted, at the time the count was in progress, in violation of section 6996, Revised Statutes 1899, which provides: ''No person or persons shall be admitted into the room or office where such ballots are being counted, except the judges and clerks of election. Provided, that any political party may select a representative man who may be admitted as a witness of such counting.''

2. That the election judges fraudulently refused to allow C. D. Bailey, who had been selected by the Socialist party to witness the count of the ballots, to remain in the polling place to watch the counting of the ballots, and that said Bailey was, ''with the knowledge and consent of the election judges,'' forcibly ejected from the room, in violation of the proviso contained in said section 6996.

3. That said judges fraudulently suffered voters

whom they knew were not entitled to vote at Dexter precinct, to vote at that place.

4. That the judges of election "fraudulently failed and refused to furnish the electors who presented themselves to vote for said office of collector of the revenue of said county, and for other offices to be filled at said election, with ballots as provided and required by section 7104 of said Revised Statutes," and furnished said electors with one ballot only, instead of one ballot for each political party voted for at said election, unless express demand was made by the elector for said ballots.

5. That no screens were provided for the booths at said polling place, nor guard rails to prevent persons having no authority from coming nearer than five feet of the ballot boxes and booths, and that "divers persons, having no right or authority whatsoever, were in and about the ballot boxes and the booths or compartments, and within less than five feet thereof, while the electors were preparing their ballots, and while the ballots were being exposed for counting by said judges."

6. That the election judges, in violation of the statute, "electioneered" with the electors who came into said voting place to cast their ballots.

7. That said judges absented themselves from the polls of said precinct, so that at times less than a majority thereof was present.

8. That the ballots were not taken out of the ballot boxes one at a time to be counted, as provided by section 6996, Revised Statutes 1899, but were "by said counting judges taken from said ballot boxes in bulk, and by them sorted out and arranged in piles or lots of ten cast for each political party voted for, and in such piles or lots pretendingly counted ten at a time, and thus entered upon the poll books."

The evidence shows that the polling place was in a large room, eighty feet long and twenty-five feet

wide, and which had been used for the same purpose at previous elections. The table of the distributing judges was in front, near the door; the table of the receiving judges near the center of the room, and that of the counting judges at the further end, some twenty feet back of the voting booths, which were arranged on both sides of the room, near the center. The voters were admitted at the front door, and after voting retired from the room by the same door. There were seven or eight booths, some of which were without screens, and there was no guard-rail provided, as required by section 7103, Revised Statutes 1899.

The only person in the polling place other than the judges and clerks of election, and the voters who came in, voted and retired from the room, was Noah Fields, constable, who kept the door at the solicitation of the judges. He was not at the counting table till after the polls were closed and the ballots nearly all counted, and he learned nothing about the ballot then. There was no evidence whatever that any of the judges of election electioneered with the voters, or attempted to influence any voter in any way; nor was there any evidence that any person, other than the judges and clerks of election, overheard the count or obtained any information as to the state of the vote until the same was formally announced; nor was it shown that there was less than a majority of the judges present at the polling place at any time that day. The evidence also shows that the distributing judges tried to get the electors who presented themselves for voting to take one ballot of each political party voted for, but that in some instances the voter asked for or selected one ticket only, which he prepared and voted as he chose; but it is not of record that any elector was refused any or all of the ballots to which he was entitled.

The record shows that C. D. Bailey was appointed as a watcher for the Socialist party at Dexter pre-

cinct.  He first appeared at the polls in the morning of the day of election, and voted, and then, after electioneering outside of the polls for the Socialist ticket, he left.  He did not again appear at the polling place until after the polls were closed, when he presented himself in the capacity of a watcher, and was admitted.  After he had witnessed the counting of the ballots for some time, some of the judges objected to his remaining longer for the reason that he had not been sworn.  He then left, went to the office of a justice of the peace, who administered the oath, but he did not return to the polling place until the ballots were nearly all counted, when he tried to get in, and was refused admittance by the constable who kept the door inside.  According to Bailey's own evidence, he did not give his name at that time or state what he was there for.  He did not state that he had been sworn as a watcher, but tried to force the door.  It was then about nine o'clock, and quite dark.  While he was at the door, two of the judges of election who had been out came back to the polling place at different times, and were admitted; but, according to Bailey's testimony, he did not speak to either judge, nor tell either that he had been sworn as a watcher and wanted to get in.

As to the method used in counting the ballots, Joseph Winchester, one of the counting judges, testified as follows:

"Mr. Clodfelter took all these ballots out of the boxes himself, and he handed them to me, and I called them off to the clerks; he would take them out, one at a time, and count them and hand them to me; and in the beginning—we began about eight o'clock—and possibly the first fifteen or twenty I called off one ballot in my hand at a time, and some one—I believe Mr. Jeffers—thought they could tally as many as five at a time, that the leaves was troublesome to turn, and that may be they could get along better and faster; and so

Mr. Clodfelter would hand them to me assorted up, so there would be five straight Democratic ballots and five straight Republican ballots. He would count them one at a time, and I would re-count them and compare them, and see that they was exactly alike. I would take them and count them off and call each name, five for so and so, and would go on down to the collector's office, and would say 'five for Ulen,' or 'five for Brannock,' or whatever it was. And after we had counted a while, I says to the tally clerks, 'If you can count five at a time you can put down ten at a time,' and then took ten on the same method. Q. While you counted one at a time, you had nine below that one? A. Yes, sir. I called them off that way to the tally clerks, but they was counted one at a time.''

The testimony of the other counting judge and of the tally clerks was to the same effect, and all testified that the ballots were counted correctly. It appears from the testimony that the ballots cast for the nominees of the Socialist party, of which there were forty-one cast in that precinct, were placed by the counting judges in an empty box by themselves as they happened to be extracted from the ballot box, and that such ballots were not counted until the judges were through with counting the votes for the Republican and Democratic nominees. There was no evidence whatever of any fraud or mistake in the counting of the ballots.

It was shown by the evidence that five men who lived in Caster township, and who should not, therefore, have been allowed to vote in Dexter precinct, did vote there.

On behalf of the contestants, the court gave the following declarations of law:

''1. The court declares the law to be that the election alleged to have been held at the voting precinct of Dexter, in Stoddard county, Missouri, on the 8th day of November, 1904, for the purpose of elect-

ing a Collector of the Revenue of county, to be legal
and valid must have been held and conducted in com-
pliance with the provisions and requirements of articles
1 and 2, chapter 102, of the Revised Statutes of 1899,
of this State, and if the court believes from the testi-
mony in the case that said election was not so held
and conducted it will declare the same    absolutely
void as a matter of law, and the finding will be for
the contestants.

"2.  The court declares the law to be that the
primary object of the election laws of this State, under
which the alleged election at the voting precinct at
Dexter, in Stoddard county, Missouri, on the 8th day
of November, 1904, for the purpose of electing a Col-
lector of the Revenue of said county was required to be
held, is to preserve the freedom and independence of
the electors in the preparation of, and depositing, their
ballots in the ballot-boxes, and to maintain inviolate
the secrecy thereof, and, if the court finds from the
evidence that said primary objects of said election
law were not maintained and preserved as contem-
plated by said election law, then the court will find
as a matter of law that no legal and valid election was
held at said time and place.

"And in this connection the court declares the law
to be that the freedom and independence of the electors
and the secrecy of the ballots meant by said election
law, is the right of the electors to enter the booths and
prepare their ballots free from observation and outside
influence, and to deliver them to the receiving judges
and have them deposited in the ballot box and counted
and certified as cast, without exposing or disclosing
their contents to others, except those entitled by law
to knowledge thereof."

The plaintiff further asked the court to give the
following declarations of law, to-wit:

"3.  The court declares the law to be that the

following provisions and requirements of section 6996 of the Revised Statutes of 1899, to-wit: .

" 'After the, delivery of ballot-box number 1 to the counting judges, the same shall be immediately opened by them, and the tickets shall be taken out, one at a time, by one of the counting judges, who shall read distinctly, while the ticket remains in his hand, the name or names written or printed thereon, also the office that is intended to be filled by such person voted for, and deliver the same to the other counting judge, who shall string the same on a thread or string, as provided by law. The same method shall be observed with each ticket, and the counting shall continue thus until all the ballots in the box are counted, . . . and so on in the same manner until the polls are closed and all the ballots are counted,' are imperative and mandatory, and that no legal and valid count of the ballot cast at said alleged election, at the voting precinct at Dexter, in Stoddard county, Missouri, on the 8th day of November, 1904, for the office of Collector. of the Revenue of said county was had, unless said ballots were counted, by the judges of said election, as said statute requires, and if the court finds from the evidence that said judges of election, or any other person or persons pretended to count said ballots in blocks of ten each, at a time, for each political party voted for at said election, or employed any other means or method to count said ballots which was a substantial disregard of said statute, it will declare as a matter of law that said ballots have never been legally counted, and could not, therefore, be legally certified and returned as having been cast for the parties hereto, and the finding will be for contestants.

"4.　The court declares the law to be that the following provision and requirement of section 6996 of the Revised Statutes of 1899, to-wit, 'No person or persons shall be admitted into the room or office where such ballots are being counted, except the judges and

clerks of election,' is imperative and mandatory, and is designed and is intended to protect and preserve the secrecy of the ballot as defined in these instructions, and, if the court finds from the evidence in the case that, while the ballots cast at said election at the voting precinct of Dexter, Stoddard county, Missouri, on the 8th day of November, 1904, for the office of Collector of the Revenue of said county, were being exposed (for that purpose) and counted, parties, other than the judges and clerks of said election, were permitted to be in the room or office where said count was being had, and while the same was in progress, it will declare as a matter of law that the secrecy of said ballots was thereby destroyed and that the pretended count thereof under such circumstances was, and is, illegal and void, and the finding will be for contestants.

"And in this connection the court further declares the law to be that, if such parties were admitted into the room or office where said ballots were being counted and permitted to remain therein while said ballots were being counted, and thereby given the opportunity to witness said count and to obtain a knowledge of the contents of said ballots, or any portion of them, then and in that event the court will presume that such parties did witness said count and did acquire knowledge of the contents of said ballots or some portion thereof."

To the action of the court in refusing to give said last two declarations of law, the contestants, by counsel, duly excepted.

While in their notice and specification of facts, a number of irregularities are specified by the plaintiffs or contestants, it is not shown that any of such were fraudulent, or that the defendant was in anywise connected therewith or derived any benefit therefrom, or that his vote was thereby increased. There were irregularities committed during the election, it is true,

but it is not shown that they were instigated by the defendant, or that they, or any of them, were committed in his interest.

It is charged in the notice of contest, and was shown upon the trial, that several voters, perhaps as many as eleven, who lived in another township in the county, voted at Dexter precinct. These votes were illegal and fraudulent, but it was not shown for whom they voted; but even if the entire number be rejected, the contestee would still have a majority of twelve votes in the county over both contestants.

There is no merit in the appeal. Besides, the term of office has long since expired. The judgment is affirmed. All concur.