————o————

FREDERICK ZEILER, Defendant in Error, *vs.* MOSES CHAPMAN, Plaintiff in Error.

1. *Elections—Registered voters, rejection of—Practice, civil—Trials—Evidence.*— The judges of an election have the right under the law to reject registered voters, and in a contest for an elective office the presumption is, that such voters were rightly rejected, unless the contrary is shown by the party claiming such rejection to have been illegal and improper.

2. *Elections—Non-registered voters—Count.*—The votes of persons not registered cannot be counted at an election.

3. *Elections, validity of—Registering officers—Failure to register the voters.*— Where prior to an election the registering officers fail to register the voters as required by law, the election subsequently held is void.

*Error to Lafayette Circuit Court.*

*Wallace & Mitchell,* for Plaintiff in Error.

I. It was not the intention of the constitution, that the right of suffrage of the citizen should be left to the whims and caprices of registration officers. There would not be time, by any of the writs known to the law, to compel a supervisor of registration to perform his duty of filling vacancies within the time limited for registration under the law.

II. Voters, who have had no opportunity to register, have a right to vote by taking the oath at the polls at the time of offering to vote. (Const., Art. 2, § 5.)

III. The taking and subscribing of the oath of loyalty is at least *prima facie* evidence of the right of the person to be registered as a qualified voter and of his right to vote, and such right can only be impaired or destroyed by proof disproving the existence of the right. (Const., Art. 2, § 5.)

IV. It was intended to leave the question of counting the

votes marked as rejected open to be decided on the contest of an election, and, in the absence of evidence to the contrary at the trial, they must be counted. (Const., Art. 2, § 5.)

*Johnson & Botsford*, for Defendant in Error.

I. The fact, that there was a partial or total failure to register the voters in Dover Township, would not authorize them to vote without being registered. (Ensworth vs. Albin, 46 Mo., 450.)

NAPTON, Judge, delivered the opinion of the court.

This is a case of a contested election for the office of Treasurer of Lafayette County in Nov. 1867. The case was originally tried in the County Court, where the contestee, Chapman, was decided to have been duly elected; and afterwards removed to the Circuit Court, where a trial *de novo* was had, which resulted in a decision and judgment in favor of the contestant Zeiler.

The facts appear to be as developed at the trial, that Chapman, the contestee, received a majority of the votes cast in the county, and upon the returns was declared elected, and duly commissioned as Treasurer; but the returns included one hundred and thirty-nine votes cast for him in Dover precinct, whereas the registration books at that precinct only showed about thirty voters who were registered. Excluding the non-registered voters at the precinct, Chapman did not have a majority of votes, unless two hundred and ninety-one voters, who were returned as "rejected voters," and who voted for Chapman, were to be counted. There was no evidence on either side in regard to the qualifications of the two hundred and ninety-one rejected voters, the contestant relying on the fact that the judges of election had reported them as rejected voters, and the contestee insisting that, as they had taken the oath of loyalty and were duly registered, *prima facie* they were entitled to vote.

To obviate the objection to receiving the one hundred and thirty-nine votes at Dover, the contestee, Chapman, proved, or offered to prove that the registration officer never was at

Dover but on one Saturday before the election, or before the fifteen days anterior to the election, that he then registered about thirty voters, and immediately resigned; that application was made to the supervisor of registration by the citizens of that precinct in the form required by law to have some one else appointed; but the application was refused, and no officer was appointed, and consequently no registration was completed in that district or precinct; that the citizens attended at the place of registration for the purpose of registering, but, as no officer was there, they could not register; that therefore on the election day they went to the polls, took the oath of loyalty, and voted. All this evidence was excluded by the court.

And the court determined, that, as the voters at Dover were not registered, their votes must be rejected. And the court further held, that, as to the rejected voters, they were not to be counted. Various instructions were asked as to the constitutionality of the oath of loyalty required by the constitution of 1865, but we have been unable to see how the question was presented by any facts in the case. The two hundred and ninety-one rejected voters had all taken the oath of loyalty prior to registration, and the voters at the Dover precinct had done the same thing, and the court might have given all the instructions asked on this point or refused them, and still decided, as was done, in favor of the contestant. It does not appear, that any vote was rejected on this account. The instructions were therefore mere abstractions, and, now that this part of the constitution is abolished, any opinion on this point would be of no practical importance.

The only questions presented by the record are, first, whether the persons marked as rejected voters made a *prima facie* case for the contestant or contestee as to their right to vote? The court decided, that having been thus marked, it devolved on the contestee to show that they were qualified voters. No evidence on either side was offered. We think the decision of the court was right on this point, although the voters had taken the oath of loyalty, and had been duly registered. The

judges of the election had still a right under the law to re-
ject them, and if they were improperly rejected that should
have been shown by the party claiming an improper and ille-
gal rejection. As there was no evidence on this point either
way, the presumption remained that they were properly re-
jected.

The second question presented is as to the result of the elec-
tion in Dover Township or precinct. There the supervisor of
registration refused to perform the duties imposed upon him by
law. We adhere to the decisions of this court heretofore made
on this registration law, that no votes can be counted where they
have not been registered; and therefore the Circuit Court de-
cided correctly, that the contestee was not elected, because
his majority was the result of counting non-registered votes
The act is peremptory on this subject, and requires registra-
tion before voting. But we do not concede, that registration
officers can defeat the will of the people by absenting them-
selves from the place of registration or resigning. If this
can be done, elections are a farce dependent entirely on the
officers selected to carry out the law. They may decline regis-
tration in a precinct, which they know to be hostile to their
views, and thus defeat the votes of all the qualified voters at
said precinct. This is not the object or intent of the regis-
tration law. We assume that a *bona fide* registration was de-
signed, and every facility is afforded to attain this object.

Whilst, therefore, we hold with the Circuit Court, that non-
registered votes could not be counted, we also hold, that the
refusal to comply with the law on the part of the officers of
registration rendered the election void, and that the contes-
tor in this case was not elected. As the contestee in this case
received the certificate of election and was commissioned,
*prima facie* he was entitled to the office. A proceeding on
the part of the State might have been instituted to oust him.
There was really no election, as the officers appointed to su-
pervise the registration failed or refused to perform their duty.
It was never intended we presume to place it in the power of
the registering officers to defeat the will of the electors by re-

fusing or failing to perform the duties imposed on them by law. This would be an outrage on the principle of popular election which the law concedes. The only effect of no registrations in a case such as this, where no registration is possible, is to render the election a nullity. The Circuit Court refused to count the votes which were not registered, and in this we think the Circuit Court was right, but this did not give the contestant the office, when it was shown, that the non-registered voters had no power of registering by reason of the failure on the part of the registering officers. To hold otherwise would be to submit the result of all elections to the officers of registration, who could attend at such precincts as they pleased, and refuse to attend to such as they thought unfavorable to their views, and a small minority of the electors could in this way elect. This was not the intent of the law, and although non-registered voters cannot be counted, we think the election is void where the registration officer fails to perform his duty. The case of West vs. Ross, 53 Mo., 350, involved the effect of omissions of the judges at the election, and the point now decided was not made or decided.

The judgment is therefore reversed. The other judges concur.