Gay v. Orcutt.

## GAY v. ORCUTT et al., Appellants.

### Division One, June 28, 1902.

Parties: ASSIGNEE OF CAUSE: POWER OF DISMISSAL: BOND.  Under the Code, the assignee of the cause of action arising *ex contractu* is the real party in interest, and as such may maintain the action in his own name regardless of any collateral agreement between himself and the assignor as to the proceeds.  Such assignee has the exclusive right to control the action, and may dismiss or discontinue the case without the assignor's sanction.  Nor does the fact that the assignors have given a bond to indemnify the assignee against all costs, give the court power to order the suit to be continued in his name.  And where the plaintiff assignee has entered into stipulation with the defendants to dismiss the suit on the payment of all accrued costs, a judgment obtained against the defendants, after such bond has been made, will be reversed.

Appeal from Chariton Circuit Court.—*Hon. Jno. P. Butler,* Judge.

REVERSED AND REMANDED (*with directions*).

*Allen, Hamilton & Dudley* and *William M. Williams* for appellants.

The court erred in allowing this suit to be prosecuted in the name of John L. Gay and refusing to dismiss the same on the stipulation between Gay and the defendants.  None but the parties to an action will be allowed to interpose in its control; and an action commenced and carried on without authority of the parties named as plaintiff, should be dismissed.   Keith v. Wilson, 6 Mo. 435; Hoover v. Railroad, 115 Mo. 77; State ex rel. v. Climber, 81 Mo. 122; Fish v. Lamereaux, 48 Mo. 523; Murphy v. Smith, 86 Mo. 333; Thompson v. Elevator Co., 77 Mo. 522.

Gay v. Orcutt.

*O. P. Hubbell, Henry L. Eads* and *Harber & Knight* for respondent.

On a verified motion the court made an order continuing the prosecution of this cause in the name of John L. Gay. Afterwards, Gay, in the interest of these defendants, filed a motion to dismiss, upon which motion evidence was heard and which evidence established the following facts: The case of Eads v. Orcutt, 79 Mo. App. 511, grew out of this same bank wreck. In that case this same John L. Gay, among others, assigned their claims to Mr. Eads and that case proceeded in his name through the courts; Gay's claim in that case was on a call deposit of about $300, while in this case it was on a time deposit for about $900. Gay sought Eads, after the trial and verdict in the first case, to bring this suit upon his and the other depositors' claims, which Eads refused to do in his own name, but agreed that he would bring it in some one of their names. Afterwards, these depositors and creditors of the bank met in Jamesport, Missouri, with Eads and Hubbell, and made an assignment of their claims, leaving the assignee's name blank until he could be agreed upon. They agreed finally upon Gay as the assignee. He was informed of this fact by Eads and assented to it. And, while Gay tries to deny that it was agreed and arranged that this suit was to be brought in his name for all of these parties, yet this fact is established beyond doubt by Jerome L. Smith, and by Harmon B. Smith. The suit was brought first in the Daviess Circuit Court July 20, 1898. The case regularly came on for trial in Sepetmber following, when Gay was present consulting with his attorneys, and at which term defendants secured a continuance finally, by Orcutt going to bed with his clothes on, but during the preliminaries for which Gay had made an affidavit for a change of venue which was in contemplation, being taken by Gay for these depositors.

Vol. 169 mo—26

At this time Mr. Rush appeared as an additional attorney in the case, and when the cause was about to be sent to St. Joseph, Missouri, Mr. Rush's home town, the plaintiff Gay took a nonsuit in order to bring the case in Grundy county, which was done December 28, 1898; the case rebrought is the same in all essentials as the one first brought in Daviess county. One of the defendant's attorneys being a member of the Legislature, entitled them to a continuance at the first term in Grundy county. At the second term of that court, June, 1899, the defendants took a change of venue and the cause was sent to Chariton county; the cause reached the Chariton court in time for the July term, and, on July 13, 1899, the other depositors and plaintiffs here, learning of Gay's "entangling alliances" with the other side, filed their motion to have the cause proceed in Gay's name for their use and benefit, which the court sustained, ordering plaintiffs to give bond in the sum of $1,000 to indemnify Gay against costs and damages; some of plaintiffs not being in attendance upon this court and those in attendance being unacquainted in Salisbury, it was more convenient and speedy for counsel to sign their bond than to have procured others to do so, which they did. At this term defendants' attorneys came forward with a stipulation to continue the cause which had been written long prior thereto by Mr. DeVorss, one of defendants' attorneys, and signed by Gay and the Prices and Orcutt. It is not questioned but that defendants' attorneys knew all about Gay's relation to the suit; that it was the same questions and issues that had been gone through by them in the Eads v. Orcutt case; and that they were dealing with Gay with full knowledge; some one caused execution to be issued against Gay for the small amount of costs incurred in the first case in Daviess county where the nonsuit was taken, which execution was issued without the knowledge of plaintiff's counsel or a word being said to them in respect thereto, and Gay says that Jordin, ex-cashier of this bank and partner of Mr. Dudley, attorney

of defendants, went to Mr. Alexander, another attorney of defendants, and brought back a stipulation which he signed dismissing the case. This was in January or February of 1899. Gay testifies that for this he was not to receive one cent. The record not only shows the utter futility of such proceedings, but furnishes, in addition, an absolute demonstration that defendants' counsel themselves had no confidence therein, for Orcutt and DeVorss take an agreement for a continuance in June after the Alexander document for dismissal which had been taken in January or February, and when Gay was asked by the court why he made an agreement to continue the case, when he had previously entered into a stipulation to dismiss it, he could not answer the question; scarcely more fortunate was his attorney, Mr. DeVorss, on this same point. If the case had been dismissed in July on Gay's stipulation for that purpose, the depositors were not yet barred by limitation, but if continued until September, six years would have elapsed since the bank's suspension and then perhaps (at least it was doubtless thought) this stipulation could be made to serve its purpose, and the eighteen or nineteen thousand dollars of claims of these parties, through Gay's machinations could be destroyed (as was doubtless supposed) by the statute of limitations. Gay denied to both Eads and Hubbell that he had made any of these secret agreements to continue or to dismiss the case; and when asked by the court why he did this, his answer was that he didn't think it was any of their business. The little item of costs never suggested itself to him, when talking to the attorneys of these other thirty-five depositors. It is suggested, again, that Mr. Gay has no protection against costs, on account of champerty; that the bond given by these thirty-five creditors to indemnify Gay is not good because their attorneys executed it on their behalf; Gay's claim is not now in question; he has abandoned his claim and his lawyers, and gone over to the other side. Then how could any arrangement or agreement between these depositors and

their attorneys affect Gay, who is rescinding all his relationship to the case (which leave is granted him) and other depositors are only asking the use of his name? This record, in short, bristles with facts and circumstances showing, beyond cavil, that Gay violated his trust, attempted secretly to sacrifice the rights of those that he undertook to represent, and, when being detected therein, falsified his acts, and when hard pressed, hired the last remaining lawyer in his county, and that too at the suggestion of defendants' attorneys, to go to Salisbury, to file his motion to dismiss, which, being overruled, he abandoned it together with the defense, almost as ruthlessly as he betrayed his first trust, and we are content to leave him where the record places him, without drastic comment so much invited by his mistaken course. The law is ample to meet just such emergencies. "It has long been the practice of courts of law to look through the nominal parties, to the rights of the real parties in interest, and where a necessary nominal party, either as plaintiff or defendant, fails or refuses to use his name, either in prosecuting or defending an action at law, courts will (upon proper indemnity as to costs and damages) permit the real party in interest to use the name of the nominal party and that against the protest of the nominal party." Sumner v. Sleeth, 87 Ill. 503; 15 Ency. Plead. and Prac., 491, 547, 639; 1 Ency. Plead. and Prac., 538; Bilmyer v. Sherman, 23 W. Va. 656; Linsey v. McGannon, 9 W. Va. 154; Tayon v. Ladew, 33 Mo. 209; Express v. Haggard, 87 Am. Dec. 259; Childs v. Thompson, 81 Mo. 337; Lilly v. Tobbein, 103 Mo. 489; Young v. Young, 99 Mo. 106; Allen v. Brown, 44 N. Y. 228.

ROBINSON, J.—This action was begun in the Grundy Circuit Court on December 28, against the defendants as officers of the Citizens Bank of Jamesport, Missouri, to recover certain deposits alleged to have been received by defendants between July 12, 1892, and July 13, 1893, when the bank

was known by defendants to be insolvent or in failing circum-
stances.   On defendants' application a change of venue was
awarded to the circuit court of Chariton county.

The petition is in thirty-six counts, each predicated on
section 2760, Revised Statutes 1889, which makes the officers
of a bank individually responsible for deposits received with
their assent, after they have knowledge that the bank is insol-
vent or in failing circumstances.

In order to avoid a multiplicity of suits, the depositors
assigned their claims to the plaintiff, and this action was
begun in his own name.   The case was tried before a jury
and resulted in a verdict and judgment for plaintiff, and
defendants have appealed.

The first of the series of errors necessary to notice which
have been assigned by the defendants for a reversal of the
judgment relates to the action of the court below in allowing
this action to be prosecuted in the name of John L. Gay and
refusing to dismiss the same on the stipulation between plain-
tiff, John L. Gay, and the defendants for that purpose.   It is
claimed by defendant that under our statute (sec. 540, R. S.
1899), requiring suits to be brought in the name of the real
party in interest, the assignee of the cause of action is re-
garded as the real party in interest and he is allowed to dismiss
or otherwise control the conduct of the case to the exclusion
of the assignors, where suit is brought on the assigned ac-
counts.

The contention on behalf of the depositors was that,
where, as here, the assignee refuses to further prosecute the
action, the court will upon indemnity as to cost and damages,
permit the cause to proceed in the assignee's name, and not
allow the latter to dismiss or discontinue the action.   It seems
that this case was originally commenced in the Daviess Cir-
cuit Court, but afterwards dismissed, and the cost, amounting
to some sixty odd dollars, taxed against the plaintiff Gay.
Whereupon the present suit was instituted, and afterwards an

execution was issued against Gay for the costs in the Daviess Circuit Court, and demand made upon him therefor.

Becoming apprehensive about the accumulation of the cost, he informed the counsel for defendants that he never authorized this action to be brought, and entered into a stipulation with them to dismiss the cause upon defendants paying the cost which had been adjudged against him in the Daviess Circuit Court, together with all cost which had or might accrue in the present suit up to the time of such dismissal. In the meantime, however, having learned of the contemplated dismissal and before the same was consummated, but after the filing of the above stipulation, the depositors filed a motion to have the case proceed in Gay's name for their use and benefit. This motion was sustained by the court upon the depositors giving bond in the sum of one thousand dollars to indemnify him against cost and damages, and defendants saved their exceptions to this action of the court.

The plaintiff thereupon filed a motion to dismiss the suit on the grounds that he did not authorize the action to be brought, the said suit having been instituted without consulting him or without his knowledge or consent, and that he had no knowledge of the assignment of the said claims to him and never agreed with the assignors to bring this suit or authorized any other person to do so. The court overruled this motion and defendants excepted.

At common law, in the case of assignment of causes of actions arising *ex contractu,* all suits upon such assigned causes of action, with the exception of negotiable instruments, must be brought in the name of the party vested with the legal interest in the contract, and not in the name of the assignee. Code of Civil Procedure, Revised Statutes 1899, section 540, however, has made a change in the relation to parties to actions. Under the provisions of this section, the assignee of the cause of action arising *ex contractu* is the real party in interest, and as such may maintain the action in his own name,

regardless of any collateral agreement between himself and the assignor as to the proceeds. This is now the settled doctrine in this State. [Guerney v. Moore, 131 Mo. 650.]

The plaintiff being the real party in interest undoubtedly had the exclusive right to control the action and might dismiss or discontinue the case without assignor's sanction. The assignors being strangers to the action will not be allowed to interfere in the suit to prevent a dismissal of the case or otherwise control the conduct of the case. Equally, of course, the assignors had no standing in court to submit a motion to carry on the suit in Gay's name after he had refused to prosecute the same. This doctrine is affirmed and settled by many authorities.

The right of a stranger to a suit to interfere with its process or conduct came up for decision in Hoover v. Railroad, 115 Mo. 77. There it was held that none but parties to suits will be permitted to interfere with or control the conduct of the suit. The court in that case said, "The general rule that none but parties to a suit will be allowed to interpose in its control obtains in this State as well as in other jurisdictions."

A similar principle was applied in State ex rel. v. Clymer, 81 Mo. 122. To the same effect is Fiske v. Lamoreaux, 48 Mo. 523. Freeman in his work on Execution, section 75, in expressing his views on the question before us, says: "The general rule that none but parties to a suit will be allowed to interfere with its management, is equally applicable to the writ of execution which may be issued at the termination of the action. None but the parties to the writ, who are liable to be injured by it, can complain of irregularities with which it may be affected. Hence, no stranger to the action can obtain an order quashing the execution."

To permit assignors, after having transferred their entire interest in the claims, to control the conduct of the suit, would not only be against the plain intent of our code, but

would involve a case in collateral issues irreconcilable, and the parties and the court in confusion inextricable. If parties wish to transfer or assign their claims or rights of action to another for convenience, economy or what not, they must understand that with the assignment goes their right to control or interfere with suits that may be brought thereon. If parties wish to control suits begun upon accounts in their favor, they must retain control of their accounts.

As the court would have no right in the first instance, to force one to whom an account had been assigned without reward or hope thereof from the assignor, to assume the responsibility of its collection by suit, it equally is wanting in authority to force against one's will the continuance of the undertaking voluntarily assumed to collect by suit an assigned account or accounts, which for reasons of prudence the assignee might conclude to abandon, and for a still greater reason would the court be wanting in authority to force an assignee to continue a suit on an assigned account in his own name when the assignee, as in this case, protests that he never caused the suit to be instituted in the first instance. The record in this case shows that the assignee never in fact gave his consent that this suit might be begun in his name, but only that he had been selected by the depositors of the defendant bank, as the one to whom the accounts should be assigned, and that he did consent that the suit which was originally instituted in his name in Daviess county might be brought, and in which suit he was afterwards compelled to take a nonsuit, and which resulted in the costs above mentioned being taxed against him. This suit was begun apparently upon the assumption on the part of the attorneys for the assignor, that as the plaintiff Gay had consented to begin one suit upon the assigned accounts (which suit he was compelled to abandon on account of unfavorable conditions arising in its progress), he certainly would sanction another suit to be maintained upon the accounts in his name, in Grundy county, where the unfavorable

condition that lead to his taking the nonsuit in the first instance did not exist. We have carefully examined the authorities cited by the able counsel for respondents wherein the courts have, to avoid a failure of justice, permitted suits to be prosecuted or continued in the name of the real party in interest, after the original party or parties thereto have lost all interest therein, but they do not apply to the conditions of this case where the real party in interest had asked that the case be dismissed. The judgment will therefore be reversed and the cause remanded to the circuit court with directions to dismiss the suit in pursuance with the stipulation entered into between the defendants and the plaintiff Gay. All concur.