ED. T. MILES, Appellant, v. CITY OF MACON, Respondent.

Kansas City Court of Appeals, November 1, 1915.

1. **LOCAL OPTION ELECTION: Contest of: Scope. Under section 7242.** Revised Statutes 1909, a local option election may be contested, not only with regard to the result thereof, but also as to the legality of the election itself.

Miles v. City of Macon.

2. ———: ———: **Australian Ballot Law: Cities of the Third Class.** Local option elections must be held according to the law governing general State elections in which the Australian Ballot system is required. Consequently, a local option election held in such city in total disregard of the Australian Ballot Law is void as it is, in law, no election at all.

3. ———: ———: ———: **General Rule Concerning Objections as to Manner of Holding Election.** If there is a substantial compliance with the law, a vote will not be invalidated or an election annulled because certain provisions of the law regarding the manner of holding the election are violated, unless that statute itself provides that such violation shall have that effect. In the absence of such a provision a failure to follow some of the many provisions of the Australian Ballot Law, which failure does not violate the general spirit and controlling object of the law, will not, in the absence of fraud in perpetration and result, be held sufficient to invalidate the election, but will be regarded only as an irregularity. On the other hand, if there is a total disregard of the law, or a willful violation of the general spirit and controlling purpose thereof, this is sufficient to annul the election.

4. ———: ———: ———: **Failure to Have Booths.** An election cannot be said to have been held in substantial compliance with the Australian Ballot Law where no booths were provided, where no facilities were furnished the voter for preparing his vote alone and free from observation or coercion of any sort, where many persons were allowed to be in the polling places electioneering with the voters and making out and furnishing to the voters ballots already prepared, and where the voters did not have a free and fair opportunity to cast a secret ballot and vote their real sentiments uninfluenced by those about them.

5. ———: ———: ———: **Controlling Object of the Australian Law.** The controlling object of the Australian Ballot Law is to secure an absolutely secret ballot to the end that each elector may express his choice uninfluenced by threats, intimidation, or corruption. To dispense with booths or compartments entirely is to ignore the very heart and vitals of the Australian law. Without booths, the opportunity to cast a secret ballot is taken away and the election is not held under the Australian Ballot system at all.

6. ———: ———: ———: **Pleading.** In order to contest a local option election, notice must be given within twenty days after the official count, which notice must specify the grounds upon which the contestant intends to rely. This notice takes the place of the petition in an ordinary suit.

7. ——: ——: ——: ——: **New Grounds of Contest: Stricken Out.** After the lapse of the twenty days allowed by law for filing a contest, a contestant cannot, by filing an amended notice, bring in new grounds wholly unrelated to those already stated. The law evidently contemplates that if any one has any objections to an election, he must present them within twenty days. To allow a contestant to bring in new grounds of contest by way of amendment after that time is to prolong the time in which such a contest could be brought beyond the limits prescribed by the terms as well as the true spirit, intent and meaning of the law. New grounds thus brought in are subject to be stricken out on motion of contestee.

8. ——: ——: ——: ——: **Sufficiency of Notice: Demurrer.** A notice contesting a local option election in a a city of the third class, which alleges that the election was not held under the Australian Ballot Law, but in total disregard thereof, in that no booths or compartments were provided, and no facilities were furnished whereby the voters could cast a secret ballot and vote their real sentiments uninfluenced by those about them, stated a good cause of action and is not demurrable.

Appeal from Macon Circuit Court.—*Hon. Nat M. Shelton,* Judge.

REVERSED AND REMANDED.

*Charles P. Hess* and *Whitecotton & Wight* for appellant.

*Guthrie & Franklin, R. S. Matthews & Son, C. G. Buster* and *Andrew Field* for respondent.

TRIMBLE, J.—Macon, a city of the third class, held a local option election on December 8, 1913. The proper officials canvassed the returns and found that 914 ballots were cast of which 475 were "against the sale of intoxicating liquor" and 439 were "for the sale of intoxicating liquor" giving to the side opposed to the sale thereof a majority of thirty-six.

Thereupon, Ed. T. Miles brought this proceeding to contest said election under that portion of section

7242, Revised Statutes 1909, which says: "The elec-tion in this article provided for, and the result thereof, may be contested in the same manner as is now pro-vided by law for the contest of the elections of county officers in this State by any qualified voter of the mu-nicipal body or of the county in which said election shall be held, by an action to contest as herein pro-vided, and which shall be brought against the munici-pal body or the county holding said election." Section 5924, Revised Statutes 1909, in relation to contests of county officers, provides that no election shall be con-tested unless notice be given the opposite party within twenty days after the official count. It further pro-vides that such notice "shall specify the grounds upon which the contestant intends to rely, and if any objec-tion be made to the qualifications of any voters, the names of such voters and the objection shall be stated therein."

The notice of contest, when filed in the circuit court of the county wherein such election was held, fills the same office in the pleadings that the petition does in an ordinary suit, and service thereof upon the con-testee constitutes summons. [Hale v. Stimson, 198 Mo. 134.]

Contestant filed his notice on December 27, 1913, and the same was made returnable to the following April term of court. Said notice, as originally filed, attacked the election upon grounds which fall into two general and distinct groups or classes: First, the re-ception and counting, against the sale of liquor, of more than seventy-nine illegal ballots cast by that num-ber of specified persons who were not qualified voters, and the rejection and refusal to count certain other legal ballots offered by certain named qualified voters who were for the sale of intoxicating liquors and who desired to vote, and would have voted, that way. Sec-ond, that no legal election was held in conformity to

the election laws of the State, but the election that was held was illegal and void because it was not held in compliance with nor in conformity to the Australian Ballot Law.

The contestee appeared at the April term and filed a motion to strike out parts of said notice and also a motion to make more definite and certain. Thereupon contestant filed an amended notice, and then a second amended notice. The contestee filed a motion to make this last more definite and certain, which was sustained. Thereupon, contestant filed a third amended notice to which contestee demurred, and the court sustained it. Whereupon, contestant obtained leave of court at said April term to file his fourth amended notice on or before September 1, 1914, in vacation. Said fourth amended notice was filed on said date and is the one on which contestant now stands.

In this last pleading, contestant abandoned, or omitted, all allegations which could be classed within the first group of grounds hereinabove stated, namely, the reception of illegal ballots and the refusal to accept legal votes. In lieu of these, contestant brought in a new class of grounds based upon the alleged invalidity of the petition upon which the election was called, the insufficiency of the steps taken by the city counsel in calling the election and in declaring, publishing and certifying to the result afterward. These matters were in no way related to any of the grounds of contest contained in the original notice, which was the only one filed within the twenty days required by law. Said new grounds were not only separate and distinct from the grounds of the original notice but they dealt with matters so wholly unrelated thereto that they could not be said to be germane to any of said original objections to the election. Contestee filed a motion to strike out these new grounds, which motion the trial court sustained. The court also struck out another portion of

said fourth amended notice which we think perhaps might have been treated as a part of the allegations relating to the nonobservance of the Australian Ballot Law in the manner of holding the election. We will speak of this later in the proper place.

After the court had acted upon contestee's motion to strike out as above stated, contestee filed a motion to make the remainder of contestant's notice more definite and certain. This the court overruled.

Contestee then demurred to said fourth amended notice and was sustained. Whereupon, contestant stood upon his notice and declined to plead further. Judgment was then entered on the demurrer dismissing the contest, and contestant appealed. He complains of the court's action in striking out parts of his notice and in sustaining said demurrer.

So far as concerns the striking out of that portion of the fourth amended notice setting up new grounds of contest wholly unrelated to any of those filed within the time allowed for filing a contest, the court's action was proper. Aside from the charge that the part so stricken out did not state facts but only alleged conclusions of law as to the invalidity of the petition calling for the election and the action of the city authorities in regard thereto, the part so stricken out attempted to raise new issues presenting an entirely new theory and requiring a new and different defense. In other words, it was in the nature of a departure from the cause of action or grounds alleged in the original notice. The object sought by contestant in bringing the suit originally was to either change the result of the election, or to have it annulled for certain specified reasons. The facts creating these grounds constituted, or went to make up, his cause of action. If now, after having begun his suit based upon a cause of action inuring to him by virtue of one or more given state of facts, he introduces a cause of action arising out of a

new and wholly different state of facts, it would seem that the new matter ought to be stricken out as a departure. But regardless of whether or not it was a departure, considered as a mere matter of pleading, still we do not think a contestant of such an election should be allowed, after the lapse of the time provided by law for that purpose, to bring in, by way of amendment, new grounds in no way related to those alleged within the proper time. The law evidently contemplates that if any one has any objections to an election, he must present them and give notice thereof within twenty days. The matter is not to be left open indefinitely, but the objections must be raised within a limited time when the facts are fresh in the minds of all and the evidence regarding the issue is still in existence. It is to the interest of the public that, when the validity of a local option election is called in question, the reasons for such contest should be promptly stated so that they may be as promptly investigated and determined. For a contestant to file a contest within twenty days alleging one ground of contest, and then, after the lapse of time has blurred the memory of witnesses, or they have become scattered, and the evidence as to the true facts has become unavailable, bring in an entirely new ground of attack by way of amendment to his original notice, would prolong the time in which such a contest could be brought beyond the limits prescribed by the terms as well as the true spirit, intent and meaning of the law. We are not saying that if a contestant files his notice within the proper time and alleges all the grounds available, and then in the course of the investigation an additional ground is disclosed, which until then had been hidden and undiscoverable, he cannot add that to his other charges. We are not passing upon that question; since that is not the state of facts existent here. The new grounds contestant seeks to bring in by way of amend-

ment, and which the court struck out, did not relate to
hidden and undiscoverable matter unearthed by testi-
mony given in the course of the judicial investigation,
but related solely to matters of record known, or which
could have been known, to contestant the very moment
he first started his contest.  This being true, the law
gave him twenty days in which to base a contest on
them, and, if he failed to do so within that time, we do
not think he should be allowed to avail himself of them
afterward.  To do so would be to render local option
elections open to attack indefinitely and keep disturbed
and unsettled matters which the law and the public in-
terest demand should be speedily settled and deter-
mined.  The court, therefore, ruled correctly in strik-
ing out the new ground set up in the fourth amended
notice.

The next question is, should the demurrer have
been sustained?

The various allegations of said fourth amended
petition, aside from those already discussed and the
merely formal parts relating to the qualifications of
contestant, may be summarized as follows:

1.  That no legal election was held as required by
law for the reason that the same was not held in sub-
stantial compliance with and conformity to the elec-
tion laws of the State, but was held under a city ordin-
ance (giving its number and title and setting it out in
full), which was invalid and void because in conflict
with and in violation of article 5, chapter 43, Revised
Statutes 1909, and especially with section 5897 thereof.

2.  That said pretended local option election was
void because not conducted in substantial compliance
with and conformity to articles 2 and 5, chapter 43, Re-
vised Statutes 1909, nor any other statute or law
authorizing the holding thereof, but that said election
was held in total disregard of and nonconformity to
the provisions of the Australian Ballot Law as pro-

vided in said chapter 43, Revised Statutes 1909, and especially in total disregard of the provisions of said articles 2 and 5 of said chapter, in this:

a. That the contestee fraudulently refused to furnish booths in the polling places in order to prevent the electors from casting a free and absolutely secret ballot whereby the vote against the sale of intoxicating liquor was greatly increased, and, therefore, the result of said election does not express the will of the voters.

b. That the contestee fraudulently failed, neglected and refused to provide any places, booths or compartments with supplies and furnish them with conveniences necessary to enable the voter to conveniently prepare his ballot, and to afford the voter a free and fair opportunity to vote yes or no on the proposition submitted, as provided in section 5897, Revised Statutes 1909.

c. That the contestee also failed to furnish any instructions as to how to vote as provided by section 5878 Revised Statutes 1909.

d. That by reason of no booths and no writing materials and no printed instructions being furnished by contestee, the electors were greatly hampered, confused and irritated, and this caused a great number of persons to unlawfully assemble and remain in each polling place in said city during said election, electioneering and preparing tickets for voters contrary to law, so that the electors were wholly unable to cast a secret, free and intelligent ballot, and in consequence thereof many electors and qualified voters of the city of Macon who were opposed to the adoption of the Local Option Law, refused to vote.

e. That forty or fifty legal voters of the city who were in favor of the sale of intoxicating liquors were fraudulently deprived of their right to vote at said election by reason of the failure of contestee to furnish

booths or compartments with supplies and conveniences therein to enable the voter conveniently to prepare his ballot for voting, by reason of which they abstained from voting, because contestee failed to hold and conduct said election under the Australian Ballot Law and by the provisions of law governing said election. And they were thereby fraudulently deprived of their right to vote a secret ballot and the result of the election was thereby made different from what it would have been. (This was the other paragraph stricken out by the court as hereinabove stated. And while the allegations of this paragraph may be somewhat indefinite and not altogether clear, this hardly justified its being stricken out but rather made it subject to the motion to make more definite and certain).

The concluding allegation of the notice was that by reason of the facts aforesaid and because nothing was done by the contestee to afford the voters a free and fair opportunity to vote yes or no as to whether or not local option should obtain in said city, the voters were, by the unlawful action of the contestee aforesaid, deprived of a free and fair expression of their will which made the result, as declared, fraudulent, illegal and void. Wherefore, contestant prayed the court to declare said election null and void.

It appears, therefore, that the ground alleged by said notice, when boiled down to their last analysis, are:

That said election was not held under the Australian Ballot Law of the State but according to a city ordinance which contained none of the State law's requirements.

That said election was held in total disregard of the law requiring the Australian system of voting because:

1. No booths or compartments were furnished.

2. No writing materials were supplied with which the voters could erase the clause they did not want.

3. Many persons were in the polling places preparing ballots for the voters and electioneering against the sale of liquor. By reason of all which the voters were deprived of a free and fair opportunity to cast a secret ballot and vote their real sentiments.

The general rule is that if there is a substantial compliance with the law, a vote will not be invalidated or an election annulled even if certain provisions regarding the manner of holding the election are violated, unless the statute itself provides that such violation shall have that effect; that, in the absence of such a provision, a failure to follow some of the many provisions of the Australian Ballot Law, which failure does not violate the general spirit and controlling object of the law, will not, in the absence of fraud in perpetration and result, be held sufficient to invalidate the election, but will be regarded only as a *mere irregularity*. On the other hand, if there is a total disregard of the law, or a willful violation of the general spirit and controlling purpose thereof, then this is sufficient to annul the election. [Hall v. Schoenecke, 128 Mo. 661; Gaston v. Lamkin, 115 Mo. 20; State ex rel. v. McMillan, 108 Mo. 153, 1. c. 161; O'Laughlin v. City of Kirkwood, 107 Mo. App. 302; State ex rel. v. Seibert, 116 Mo. 415; Foster v. Scharff, 15 Ohio St. 532.] In Bowers v. Smith, 111 Mo. 45, 1. c. 61-2, it is said: "Undoubtedly some irregularities are of so grave a nature as to invalidate the whole return of the precinct at which they occur; as, for example, the omission of registration. [Zeiler v. Chapman (1874), 54 Mo. 502.] In determining which are of that kind, the courts aim merely to give effect to the intent of the lawmakers in that regard, aided by established rules of interpretation. If the law itself declares a specified irregularity to be fatal, the courts will follow that command irre-

spective of their views of the importance of the re-
quirement.    [Ledbetter v. Hall (1876), 62 Mo. 422.]
In the absence of such declaration, the judiciary en-
deavor as best they may to discern whether the devia-
tion from the prescribed forms of law had or had
not so vital an influence on the proceedings as prob-
ably prevented a free and full expression of the
popular will.   If it had, the irregularity is held to
vitiate the entire return; otherwise it is consid-
ered immaterial   .   .   .   Courts justly consider
the chief purpose of such laws, namely, the obtain-
ing of a fair election and an honest return, as
paramount in importance to the minor requirements
which prescribe the formal steps to reach that end;
and, in order not to defeat the main design, are fre-
quently led to ignore such innocent irregularities of
election officers as are free of fraud, and have not in-
terfered with a full and fair expression of the voters'
choice.''

Now, if the facts, alleged are true, and for the
purposes of the demurrer we must so accept them,
then it would seem that, where an election was held
in which no booths were provided; where no facilities
were furnished to the voter for marking his ticket and
doing so alone and free from observation or from
coercion of any sort; where many persons were al-
lowed to be in the polling places electioneering with
the voters and making out and furnishing to the voters
ballots already prepared; and where the voters did
not have a free and fair opportunity to cast a secret
ballot and vote their real sentiments uninfluenced by
those about them, the election cannot be said to have
been held in substantial compliance with the Austral-
ian Ballot Law.   We do not mean to say that a mere
deviation from the methods marked out for the hold-
ing of an election would be sufficient to violate the
spirit and general purpose of the law and invalidate

the election, but certainly the failure to observe any of the above requirements would do so. Especially the fact that there was an entire absence of booths whereby *no* opportunity was afforded to preserve the secrecy of the ballot. In Gaston v. Lamkin, supra, page 35, the Supreme Court, speaking of the Australian Ballot system, says its salient features "are that at such an election no ballot shall be cast or counted except one printed at the public expense, provided by public officers, indorsed by two of them in a certain manner, delivered by them to the voter, and by him prepared alone in a certain manner in a private place provided for that purpose, screened from the observation of others, folded so as to conceal the face and expose the indorsement, and forthwith voted before the voter leaves the polling place." The court held that an election held in disregard of these provisions was void. The court also said that where these general objects of the law were not preserved and secured, the election was not held in substantial compliance with, but wholly ignored, the law and set it at naught.

In Hall v. Schoenecke, supra, at page 669, the Supreme Court say: "That the controlling object of the Australian Ballot Law is to secure an absolutely secret ballot, to the end that each elector may fully express his choice of the candidates to be voted for, uninfluenced by threats or intimidation, and that corruption of his vote may be prevented, cannot be doubted. Every positive requirement, therefore, which, if disobeyed, would necessarily defeat this object, should be held mandatory. But such as do not have that effect should be treated as directory, and a failure by the elector to comply strictly therewith should not be held to invalidate the vote, if the spirit of the law, in the particular case is not violated." The court says further on the same page: "The spirit of the law and its purpose require that the ballot shall be secret. That it may be

made so, booths are to be provided in which the ballot shall be prepared for voting. If the spirit of the law is pursued, that is, if the ballot is in fact a secret one, the will of the elector should not be defeated, unless expressly done by the statute, for a failure to comply strictly with the directions. [Woodward v. Parsons, L. R. 10 C. P. 733.]'' The whole object of the Australian Ballot Law is to secure two things: The preparation of his vote by the voter, in secret and free from observation, coercion, intimidation, or corruption, upon an official ballot furnished him by the judges, and the depositing of such ballot in the ballot box in such manner as to keep secret the way he voted. To dispense with booths or compartments entirely is to ignore the very heart and vitals of this purpose of the Australian law. Without booths, the opportunity to cast a secret ballot is taken away, and the election is not under the Australian law at all. If booths can be dispensed with, which enable the voter to prepare his ballot in secret, then why cannot the ballot boxes and the official ballots themselves be dispensed with? The truth of the matter is an election without booths of any sort is an election held in total disregard of the Australian law. Section 7239 of the Local Option Statute provides that, in cities, the election shall be conducted in all respects in accordance with the laws governing municipal elections in such cities; and section 9145, regarding elections in cities of the third class, requires all city elections to be held under the provisions of the general election laws of the State and they in turn require the Australian system to be followed. So that, in cities of the third class, local option elections must be conducted under the Australian system. Contestee's view is that the facts alleged in the notice are not such as show a total disregard of the law requiring the Australian system to be followed, but merely that some of its many provisions were not observed,

and hence such violations will constitute *mere irregularities* which are not sufficient grounds to invalidate the election unless it is alleged and shown that said violations were fraudulently committed and worked an actual fraud upon the voters, by which the result of the election was changed from what it otherwise would have been; and that in the absence of such allegations charging fraud upon the officers and showing specifically how that fraud operated upon the voters and upon the announced result, contestant's notice states no cause of action. If the law's requirements as to booths and as to secrecy in the preparation and depositing of the ballot can be dispensed with without violating the whole object and spirit of the Australian Ballot Law and disregarding it entirely, then we do not know what would violate or disregard it.

We are cited to the case of Skelton v. Ulen, 217 Mo. 383, in support of contestee's view that the failure to have any booths or compartments constitutes a mere irregularity. In that case one of the allegations was that the booths were without screens and there was no guardrail. Because the Supreme Court refused to disturb the election and said that the contestant had alleged a number of facts which were only irregularities, contestee here argues that a failure to have any booths or compartments whatever would also be treated as an irregularity. We do not think this is a logical deduction to be drawn from the decision. The Supreme Court was considering the case on its merits, and, in its analysis of the evidence, shows that there was a substantial compliance with the law. It is not said whether screens were in fact absent from the booths or not, but the court does go on to show that booths were used and that the voters had a full, free and fair opportunity to vote their sentiments unmolested by any one and to prepare and cast their ballots and to have the secrecy thereof duly preserved. Under

such circumstances, a holding that the mere absence of screens or guardrails was an irregularity, can in no sense be considered as a holding that the failure to have any booths or compartments at all, whereby the voter had no privacy and could not vote a secret ballot, would be regarded as a mere irregularity.

Believing that the notice in the case at bar alleged a total disregard of the State election law in the holding of said election, we are of the opinion that the court erred in sustaining a demurrer thereto. If there was a total disregard of said law, then there was no election. And under the allegations of the notice, contestant should have been allowed the opportunity to introduce proof of that charge and establish it if he could.

Point is made that the question whether or not any election was legally held cannot be inquired into in a contest of this kind, but that the contestant can only question the *result* thereof. This is clearly untenable. The statute authorizing contests of local option elections says, "The *election* . . . *and* the result thereof may be contested, etc." The power to contest given by the statute is not limited in its scope, and consequently not only the result of the election, but the legal existence and validity of the election itself, may be inquired into. [State ex rel. v. Ross, 161 Mo. App. 671.]

For the reason above indicated the judgment is reversed and the cause remanded. All concur.

## ON MOTION TO DISMISS APPEAL.

ELLISON, P. J.—This action was instituted in December, 1913, to contest an election held in the city of Macon under what is known as the Local Option Law to determine whether intoxicating liquors should be sold in said city. The result of the election, as

193 App. 21

officially returned and certified, was against the sale of such liquors. Within twenty days thereafter, plaintiff, then a qualified voter in said city, instituted a contest of said election as authorized by section 7242, Revised Statutes 1909. A demurrer to the petition was filed by the city and sustained by the trial court. The allegations in the petition as to matters stated to have invalidated the election being insisted upon by plaintiff, he refused to amend and judgment was entered against him. He thereupon appealed to this court. In due course it was argued and submitted to this court and on the 1st day of November, 1915, in an opinion promulgated that day, we held that the matters alleged by plaintiff, if true, invalidated the election and we reversed the judgment of the trial court and remanded the case for answer and trial. Thereafter, on the 8th day of November, 1915, defendant filed a motion for rehearing.

Afterwards and while such motion was pending, plaintiff, ignoring the attorneys who had, so far, successfully maintained the contest which he was prosecuting, appeared through the attorneys for the defendant city, and for the reason, among others, that he had become a non-resident of the city and that he had been criticized, asked that the motion for rehearing "be sustained and by agreement of the plaintiff, the judgment of the circuit court be affirmed." This motion, or request of the plaintiff has been vigorously resisted and the right of the plaintiff to thus, summarily, finally to dispose of the case is the question for decision.

The statute (Chapt. 63, Art. 3, R. S. 1909) provides for the holding of elections in counties, and in certain cities, for the purpose of determining whether intoxicating liquors may be sold. It is provided by that statute (Sec. 7242) that "any qualified voter" may contest such election "in the same manner pro-

vided by law for the contest of the elections of county officers." The latter law (Sec. 5924) requires that notice of the contest should be "given to the opposite party within twenty days after the votes shall have been officially counted." It appears that within the twenty days the institution of proceedings for a contest of the election was discussed among a number of those who contended there had not been a legal election and it was determined to make the contest, the plaintiff herein, to use his own words, "with reluctance consented to be the contestant."

We think it clear that the contest of a local option election is not the private affair of the person in whose name it is instituted. He acts for the general public as well as himself. Having voluntarily assumed this public duty, he has not the right to withdraw from it, at his caprice, if in so doing he destroys the public right he set out to maintain. We fear that counsel for defendant, in their zeal for success in this particular case, have overlooked the consequence of a precedent that would plague any good community in the State which may find itself in the reverse situation to that said to be facing the welfare of the city here involved. See the result of permitting such action: The majority of the legal voters of a community or city may vote at an election against the sale of intoxicating liquors; corrupt, ignorant or well meaning though mistaken officers, through the aid of fraudulent or illegal votes, may certify the election as being in favor of the sale of such liquors. A contest cannot be had unless begun within twenty days. A voter (possibly an enemy to the cause, in disguise) assumes the duty of contesting, begins the proceedings and then, a few days after the time limit has expired, dismisses the contest, leaving the community to be afflicted with the traffic it had voted against.

The right of the public in an election contest is thus stated in section 454 of McCrary on Elections:

"A contested election case, whatever the form of the proceeding may be, is in its essence a proceeding in which the people—the constituency—are primarily and principally interested. It is not a suit for the adjudication and settlement of private rights simply. It follows that the parties to the record cannot, by stipulation or otherwise, discontinue or compromise a case of this character without the consent and approval of the court or tribunal trying it. Nor should such consent ever be given, unless the court giving it is sufficiently advised to be able to say that it is for the interest of the public to do so."

In 3 Cyc. 183 (italics ours) it is said that, "An appeal will be dismissed where both appellant and respondents so request or agree, if the rights of persons not parties to record will not be affected, *and the action is not one in which the public can be considered a party.*"

In a county in California a postmaster was elected sheriff. Under the constitution of that State, one holding a Federal office to which a salary of more than $500 was attached was not eligible to hold a State office. A citizen contested his right to the office and a motion to dismiss the proceeding was overruled. The contestee declining to answer, the court, without proof by either party rendered judgment annulling the election. The Supreme Court held the action to be clearly erroneous, saying: "The public is interested in a case of this character; it is not a matter solely between the parties to the record, and the popular will is not to be set aside upon a mere failure of a party to respond to charges alleged against his right by an individual elector." [Searcy v. Grow, 15 California 117, 119.]

It seems that by provision of a statute in Pennsylvania twenty qualified voters could contest the elec-

tion of one claiming to be elected district attorney by becoming petitioners for that purpose. Thirty-one voters instituted proceedings for contest of the election of one Kneass. More than twenty asked leave to amend the petition. The leave was resisted, but granted. The court stated that if less than twenty had asked, the same ruling would have been had, and added these observations: "Suppose an election had been carried by the most abominable fraud—the Act requires there should be twenty citizens of the county to sign a petition for the contest. Ten of those who were concerned in the fraud might unite with ten innocent individuals in the contest, and then appear and ask to withdraw, or to refuse to unite in an amendment clearly admissible, and thereby conceal the very fraud they had concocted and perpetrated. I concur with Judge Woodward in his able opinion found in 3rd Vol. L. J. 160, that the jurisdiction of the court had attached from the moment the petition was filed, and a few individuals, by withdrawing should not shut off all inquiry." [Kneass' Case, 2 Parsons, 553, 556, 570.]

Many instances may be cited where from the very nature of the case a party to the action should not be allowed arbitrary control of it. In this case the plaintiff is a mere instrument through which the court acquires jurisdiction to set on foot and pursue to the end, inquiries which are of public concern. His action gave the court jurisdiction to pursue an inquiry, not for him alone, but for the entire community concerned. It could not have been intended that such a party had the power to validate, or invalidate, an election at his own will.

The motion will be denied. The other Judges concur.