STATE ex rel. ED. T. MILES and CITY OF MACON v. JAMES ELLISON et al., Judges of Kansas City Court of Appeals.

**In Banc, December 4, 1916.**

1. **COURTS OF APPEALS: Jurisdiction: Failure to Follow Last Prior Decision.** The courts of appeals are courts of last resort, and when acting within their jurisdiction and not in violation of the decisions of the Supreme Court, can decide cases as their judgment dictates, and in so doing can commit error and decide incorrectly.

2. ———: ———: ———: **Certiorari.** If the Court of Appeals, in deciding a case of which it had jurisdiction, did not run afoul of the last previous decision of the Supreme Court, its error, if any, cannot be reached by writ of *certiorari*, and the preliminary writ issued out of the Supreme Court must be quashed.

3. ———: **Election Contest: Office of Notice and Demurrer.** The notice of a contest of a local option election fills the office of a petition, and a demurrer thereto admits the facts set up in the notice, and such demurrer being sustained and there being no further pleading such facts are on appeal taken as the facts of the case.

4. ———: **Local Option Election: Disregard of Australian Ballot Law: Certiorari.** A holding of the Kansas City Court of Appeals, in a contested election case over which it had jurisdiction, that a local option election at which the Australian Ballot Law was entirely disregarded and its general spirit wilfully violated—at which there were no booths provided and no effort to preserve the secrecy of the ballot, and many persons were allowed to be in the polling places and to mark and furnish the voters ballots already prepared—was an illegal election, and not a mere irregularity or failure to follow some of the directory details of the law's many provisions, is not contrary to any prior decision of the Supreme Court, and its decision holding the election invalid will not be disturbed by *certiorari*.

5. ———: ———: **Dismissing Contest.** A decision of the Court of Appeals, holding that the contestant will not be permitted to dismiss an election contest, after said court has held the election void for that it was held in total disregard of the Australian Ballot Law, and that the contestant acts for the public as well as himself and to permit him to dismiss after it is too late, under the statute, for another contest to be instituted, is not in conflict with any prior decision of the Supreme Court, and the preliminary rule in *certiorari*, by which it is sought to quash such decision, is itself quashed.

## *Certiorari.*

WRIT · QUASHED.

*Guthrie & Franklin, C. G. Buster, R. S. Matthews, Otho F. Matthews, W. B. Hagan* and *Andrew Field* for relators.

(1) The Kansas City Court of Appeals has jurisdiction to decide cases appealable to it according to the "last previous ruling of the Supreme Court on any question of law or equity." Within that limitation the Court of Appeals has jurisdiction. Beyond that it has no jurisdiction. Constitution 1875, Amendment of 1884, sec. 6; State ex rel. v. Robertson, 264 Mo. 678. (2) The Supreme Court shall have superintending control over courts of appeals' by mandamus, prohibition and *certiorari*. Constitution 1875, Amendment of 1884, sec. 8. (3) General allegations of law or conclusions, whether relating to fraud or other matter, are of no force and effect and not demurrable or traversable

and make the pleading in which they occur bad.  Break
Beam Co. v. Bakewell, 224 Mo. 214; Chemical Works
v. Nemnich, 169 Mo. 397.  (4) Election statutes are
made to preserve and not to destroy the rights of the
voter and so long as failure to observe the statutory
regulations do not destroy his right, they will not
defeat the validity of the election.  Where the voters'
wills are expressed at the election, violation of the pro-
visions intended to protect him shall not destroy the
election.  In other words, "the Sabbath was made for
man, not man for the Sabbath."  So, the statute was
made to secure fair elections and not to defeat them.
(5) Notice of contest in an election case must be
judged by the rules pertaining to the sufficiency of a
petition and hence must state a cause of action to
give the court jurisdiction.  Hale v. Stinson, 198 Mo.
145; State ex rel. v. Hough, 193 Mo. 615; Costello v.
Circuit Court, 28 Mo. 264.  (6) Contestant's notice
must set forth the particular facts relied upon as in-
validating the election.  State v. Spencer, 166 Mo. 271.
General averments of the notice are mere conclusions
of law.  Bowers v. Smith, 111 Mo. 60; 15 Cyc. 405;
People v. Glenn County, 100 Cal. 419.  Fraud must be
particularly pleaded in apt words with every fact and
intent constituting it.  Loomis v. Jackson, 6 W. Va.
613.  There is no averment in the contest notice that
any particular voter lost his vote or changed by rea-
son of the alleged conditions.  (7) The Australian
Ballot Law, article 5 of the Election Law, section 5889
to 5932, has innumerable rules, and the failure to com-
ply with those rules does not void the election where
the contestee is not guilty of actual fraud.  State v.
Roberts, 153 Mo. 125; Hope v. Flentge, 140 Mo. 413;
Sanders v. Lacks, 142 Mo. 255; Bowers v. Smith, 111
Mo. 58; Hall v. Schoenecke, 128 Mo. 668; State ex rel.
v. Smith, 129 Mo. App. 56.  (8) The election laws
should be liberally construed with reference to uphold-
ing the election.  Nance v. Kearbey, 251 Mo. 383;
Hale v. Stimson, 198 Mo. 146; State ex rel. v. Hough,
193 Mo. 615.  (9) The provisions of the statutes gov-

erning the conduct of elections are *per se* mandatory only where the Legislature has declared that a departure from the prescribed methods shall avoid the election. Hope v. Flentge, 140 Mo. 390; Langford v. Gebhart, 130 Mo. 628; Gaston v. Lamkin, 115 Mo. 24; Bowers v. Smith, 111 Mo. 61; State ex rel. v. Frazier, 98 Mo. 429; Ledbetter v. Hall, 62 Mo. 423. (10) Booths are merely one of the many requirements of the election laws. The failure of an officer to do his duty and supply the same does not vitiate the election. There must be more than a failure to have booths and that must be pleaded and stated and show a fraudulent result. Skelton v. Ulen, 217 Mo. 393. The fact of the judge entering the booth, which is forbidden in the same section, did not vitiate the matter, as it was without fraud. Hope v. Flentge, 140 Mo. 413. So other apparently vital matters. Sanders v. Lacks, 142 Mo. 255; Bowers v. Smith, 111 Mo. 60. (11) The right to vote is constitutional and the statute is made only for the purpose of preserving that right and making it secure, and where violations of these regulations do not in fact deprive the voter of his constitutional right they cannot avoid the election, and thus destroy his constitutional right.

*Charles P. Hess* and *Whitecotton & Wight* for respondents.

(1) One of the cases that relators seem to rely on in support of their contention is the case of Skelton v. Ulen, 217 Mo. 393. We insist that this case does not sustain relators' contention that the absence of booths will not avoid an election. The contention in this case is that there was a total disregard of the state election laws in the holding of the local option election and this being so the election was void, there being no election. This view is supported by the holding of this court in case of Gaston v. Lamkin, 115 Mo. 20. (2) Under these opinions it was not necessary for the contestants to aver in addition to the fact that the election was not held in compliance with the laws, that "any one per-

son failed to vote secretly or to make out a secret ballot and that the election was not in effect secret.'' (3) The first of the contentions of the relator is that respondent must allege that the manner of holding the election resulted in actual fraud and that respondent must allege in what way it was fraudulent. No court has held this to be the law. It would be impossible to prove such an allegation of fraud.

REVELLE, J.—This is an original proceeding by *certiorari* to quash a judgment of the Kansas City Court of Appeals reversing a judgment of the circuit court of Macon County, Missouri, which latter judgment· was rendered on the pleadings in a certain case wherein one Ed. T. Miles was seeking to contest a local option election held in the city of Macon, on December 8, 1913. [Miles v. Macon, 193 Mo. App. 306.] The notice of contest, which in such cases fills the office of a petition and to which contestee successfully demurred, attacked the election upon the ground, among others, that the same was not held in compliance with the Australian Ballot Law, but in conformity to a city ordinance whose provisions are in conflict with the election laws of the State. The requirements of the general law, not exacted by the ordinance, and which it is alleged were totally disregarded and violated in the election held, are those contained in sections 5897, 5898 and 5919, Revised Statutes 1909. The specific complaint is that no booths or compartments or other conveniences to enable the voter to prepare and cast a secret ballot were furnished; no writing materials or other supplies and conveniences were provided with which the voters could erase the clause against which they desired to vote and that no instructions for the guidance of electors were printed and posted; that many persons were in the polling places preparing ballots for the voters, and electioneering against the sale of liquor; and that by reason of all these matters the voters were deprived of a free and fair opportunity to cast a secret ballot and vote their real sentiments.

We have no original appellate jurisdiction of this cause and our review is limited to the question of whether the Court of Appeals in holding as it did went contrary to the last previous rulings of this court. While this court has recently done considerable writing and its members expressed divergent views as to what constitutes our record in cases of this class, we all yield assent to the one proposition that the courts of appeals are courts of last resort, and when acting within their jurisdiction and not in violation of our decisions, can decide cases as their judgment dictates, and in so doing can, without interference on our part, commit error and decide incorrectly, just as we can. [State ex rel. Delano v. Ellison, 181 S. W. 78; State ex rel. Pedigo v. Robertson, 181 S. W. 987; State ex rel. Iba v. Ellison, 256 Mo. l. c. 666; Majestic Mfg. Co. v. Reynolds, 186 S. W. 1072; Harrison v. Jackson County, 187 S. W. 1183.]

If the Court of Appeals did not run afoul our decisions in holding that the election was invalid for the reasons heretofore stated and that the con-

**Invalid Election.** testant should not be permitted to dismiss the action under the circumstances hereinafter stated, our writ must be quashed, for these are the only questions properly presented and legitimately involved. Concerning the first the Court of Appeals says:

"The general rule is that if there is a substantial compliance with the law a vote will not be invalidated or an election annulled even if certain provisions regarding the manner of the holding of the election are violated unless the statute itself provides that such violation shall have that effect; that in the absence of such a provision a failure to follow some of the many provisions of the Australian Ballot Law, which failure does not violate the general spirit and controlling object of the law, will not, in the absence of fraud in perpetration and result be held sufficient to invalidate the election, but will be regarded only as a *mere irregularity*. On the other hand, if there is a total disregard

of the law, or a wilful violation of the general spirit and controlling purpose thereof, then this is sufficient to annul the election. [Hall v. Schoenecke, 128 Mo. 661; Gaston v. Lamkin, 115 Mo. 20;. State ex rel. v. McMillan, 108 Mo. 153; O'Laughlin v. City of Kirkwood, 107 Mo. App. 302; State ex rel. v. Seibert, 116 Mo. 415; Bowers v. Smith, 111 Mo. 45; Foster v. Scarff, 15 Ohio St. 532; Zeiler v. Chapman, 54 Mo. 502.] . . .

"Now, if the facts alleged are true, and for the purposes of the demurrer we must so accept them, then it would seem that where an election was held in which no booths were provided, where no facilities were furnished to the voter for marking his ticket, and doing so alone and free from observation or from coercion of any sort; where many persons were allowed to be in the polling places electioneering with the voters and making out and furnishing to the voters ballots already prepared; and where the voters did not have a free and fair opportunity to cast a secret ballot and vote their real sentiments uninfluenced by those about them, the election cannot be said to have been held in substantial compliance with the Australian Ballot Law. We do not mean to say that a mere deviation from the methods marked out for the holding of an election would be sufficient to violate the spirit and general purpose of the law and invalidate the election, but certainly, the failure to observe any of the above requirements would do so. Especially the fact that there was an entire absence of booths, whereby *no* opportunity was afforded to preserve the secrecy of the ballot."

The court then proceeds to point out that the object of the Australian Ballot Law is to enable the voter to prepare and cast his ballot in secret and free from observation, coercion, intimidation or corruption and in support thereof cites Hall v. Schoenecke, 128 Mo. 661; Woodward v. Sarsons, L. R. 10 C. P. 733; and Ledbetter v. Hall, 62 Mo. 422.

The court further says:

"To dispense with booths or compartments entirely is to ignore the very heart and vitals of this purpose of the Australian Law. . . . If booths can be dispensed with, which enable the voter to prepare his vote in secret, then why cannot the ballot boxes and the ballots themselves be dispensed with? The truth of the matter is, an election without booths of any sort is an election held in total disregard of the Australian Law. . . . If the law's requirements as to booths and as to secrecy in the preparation and depositing of the ballot can be dispensed with without violating the whole object and spirit of the Australian Ballot Law, and disregarding it entirely, then we do not know what would violate or disregard it."

Relators here insist, as they did in the Court of Appeals, that the facts stated constitute *mere irregularities* which do not invalidate the election, and in support thereof cite Skelton v. Ulen, 217 Mo. 383. The Court of Appeals discusses that particular case and approves the doctrine and conclusion therein announced. In that case this court merely held that an election was not void merely because the booths provided were not screened and there was no guardrail. It clearly appears from the record of that case that the election was held in pursuance of the Australian Ballot Law and was strictly complied with in all respects except that there was no guardrail and that the booths furnished were without screens. Such matters clearly constitute a mere irregularity, but that is. radically different from a case where no effort whatever has been made to conduct an election in pursuance of the law. This election was conducted as though the general election laws were not applicable, although sections 7239 and 9145, Revised Statutes 1909, expressly make them so.

If the allegations of the notice are true, the whole spirit and purpose of the general law was completely ignored and violated, and if the matters complained of can be treated as but irregularities it is difficult to con-

ceive of a case which would not fall within that inno-
cent class.

We have carefully reviewed the decisions of this
court which relators cite as holding the contrary, but
find that they not only do not sustain their contention,
but are in spirit to the contrary.

The facts material to the second contention are that
after the cause was submitted on appeal and after a
decision had been rendered and an opinion handed
down, and while a motion for rehearing was
pending, Ed. T. Miles, in whose name the
contest was conducted, without the knowl-
edge or consent of his attorneys, appeared
through the attorneys for his adversary and asked that
the motion for rehearing be sustained and the judg-
ment of the circuit court be affirmed, assigning as rea-
sons therefor that he had become a non-resident of the
city and had been criticized for his action in instituting
and conducting the contest. The Court of Appeals
denied his motion, holding that a local option election
contest is not the private affair of the person in whose
name it is instituted. The court says:

*Dismissing Election Contest.*

"He acts for the general public as well as himself.
Having voluntarily assumed this public duty he has
not the right to withdraw from it at his caprice if in
so doing he destroys the public right he set out to
maintain."

The court then points out some of the far-reaching
results which might follow in the event the contestant
was allowed arbitrary control of such an action. It
cites cases and authority holding that the action is one
in which the public must be considered a party and
that if its interests will be prejudiced or adversely
affected by a dismissal, the same will not be permitted.

The present case itself argues well in support of the
conclusion reached by the court. Law and orderly pro-
cedure demand that on all matters submitted to the
public for decision a full and free opportunity for an
expression of the public will be afforded. To assure
this result provision is made for a contest, which must

be instituted, if at all, within a specified period. In cases of this character any *qualified voter* is authorized to institute the contest within twenty days after the official count. It is not necessary that he be interested in the business of selling or suppressing the sale of intoxicating liquor. ' It is not the policy of the law to encourage the institution of numerous suits having one and the same purpose. When a contest, peculiarly affecting the public interest as local option contests do, is instituted, the public is justified in assuming that it will be prosecuted to an end and that the question of whether the election has been free and open and has reflected the public will, will be finally determined, and this, regardless of the results of such an election.

Further indicating the public nature of such a contest is the section authorizing same and which provides that the public, that is the municipal body or county holding the election, shall be made the contestee or party defendant. [Laws 1909, p. 470.]

The Court of Appeals has found that the election conducted in the instant case was invalid and did not afford an adequate opportunity for the expression of the public will, yet, notwithstanding this, if the contestant is now permitted to dismiss the contest (it being too late for the institution of another) the invalid election would have the effect of a legal one, and this is contrary to the lawful order of things. Or, as said by the Court of Appeals: The consequence of such a precedent ''would plague any good community in the State which may find itself in the reverse situation to that said to be facing the welfare of the city here involved. See the result of permitting such action: The majority of the legal voters of a community or city may vote at an election against the sale of intoxicating liquors; corrupt, ignorant or well meaning though mistaken officers, through the aid of fraudulent or illegal votes, may certify the election as being in favor of the sale of such liquors. A contest cannot be had unless begun within twenty days. A voter (possibly an enemy to the cause, in disguise)

assumes the duty of contesting, begins the proceedings and then, a few days after the time limit has expired, dismisses the contest, leaving the community to be afflicted with the traffic it had voted against.''

It is, however, unnecessary for us to determine the soundness or correctness of this ruling since an investigation discloses that it is not in conflict with any previous holding of this court.

Without analyzing the cases cited by relators, it suffices to say that they involve altogether different questions and are in no manner controlling of the one herein presented. The authorities cited in this connection are Hoover v. Railway, 115 Mo. 77; Gay v. Orcutt, 169 Mo. 400, and Gantt v. Brown, 244 Mo. 271.

Finding no conflict between the decision in this case and the prior rulings of this court the preliminary writ heretofore issued is quashed. *Graves, C. J., Walker, Faris,* and *Blair, JJ.,* concur; *Bond, J.,* concurs in result for want of jurisdiction; *Woodson, J.,* dissents.